# GILPIN v. MISSOURI, KANSAS & TEXAS RAIL-
# WAY COMPANY, Appellant.

### Division One, June 19, 1906.

1. **STOCK ON RAILROAD: No Cattle-Guard: Liability: Excep-
tion.** Under the statute (sec. 1106, R. S. 1899) giving to the
owner damages for stock which go onto a railroad not "inclosed
by a good fence" and are injured, no liability attaches to the
railroad company for failure to put a cattle-guard at the place
where the stock enters if to do so would endanger the lives or
limbs of the company's employees. No such express exception
is written in the statute, but to construe it otherwise would
make its meaning unnatural.

2. ———: ———: ———: **Uncontradicted Evidence.** And where
the evidence was uncontradicted that a cattle-guard at the
crossing where the horse sued for entered upon the track would
have endangered the lives of the railroad's employees operat-
ing the switches at that point, a judgment for plaintiff cannot
stand.

3. ———: ———: ———: **Prima-Facie Case: Exception: Burden.**
The owner of a horse which went onto a railroad track and
was killed, makes out a prima-facie case of negligence on the
part of the railroad by showing that there was no cattle-guard
at the crossing where the horse entered upon the track, and
because of that fact the horse got on the track and was killed.
And if his evidence stops there, he has made out a prima-facie
case, which casts the burden on the railroad company to show
that a cattle-guard could not have been maintained there with-
out imperiling the lives of railroad employees whose business
required them to walk over it. But if, in order to show the
condition of the crossing at the particular place, it becomes
necessary for plaintiff to show the whole condition and in do-
ing so he shows a condition which speaks for itself and sug-
gests a question of whether or not· a cattle-guard could be
maintained at the place without endangering the lives of the
company's employees whose business in operating trains com-
pelled them to pass over it, the burden is not cast upon de-
fendant, but plaintiff, under such circumstances, is not entitled
to ask the jury for a verdict until he has shown by some explan-
atory evidence that a cattle-guard could have been maintained
there without imperiling the lives and limbs of the railroad
employees.

4. ———: ———: **Expert Testimony.**  Expert testimony is not necessary to show that a cattle-guard in a switch-yard will endanger the lives of railroad employees engaged in operating trains there.

Transferred from Kansas City Court of Appeals.

REVERSED.

*Geo. P. B. Jackson* for appellant.

(1) The court erred in permitting plaintiff and witness Cox to testify in rebuttal.  The inquiry did not cover the whole situation, and the witnesses, by their own testimony, showed that they were not qualified to speak on the subject.  (2) The court erred in giving plaintiff's first instruction.  There was no evidence to warrant it; it did not present the question fully and fairly to the jury with reference to the locality of and danger to defendant's employees.  It made defendant's duty as to fencing depend upon absolute necessity, and not upon the exercise of reasonable care for the safety of its employees.  Pearson v. Railroad, 33 Mo. App. 543; Jennings v. Railroad, 37 Mo. App. 652; Crenshaw v. Railroad, 54 Mo. App. 233; Grant v. Railroad, 56 Mo. App. 65; Webster v. Railroad, 57 Mo. App. 451; Hurd v. Chappell, 91 Mo. App. 317.  (3) The court erred in refusing to give the instructions as prayed by defendant.  They were in accord with the decisions on the subject, and correctly stated the rights and duties of the parties in the premises.  Cases cited under point 2; Lewis v. Railroad, 59 Mo. 495; Morris v. Railroad, 58 Mo. 78.

*E. W. Hinton, Webster Gordon* and *N. T. Gentry* for respondent.

(1) Plaintiff made a prima-facie case when he proved that the animals came on the right of way and tracks at a point where they were unfenced, scared by a passing train and caused to run into a bridge and

killed. Perkins v. Railroad, 103 Mo. 52; Briggs v. Railroad, 11 Mo. 175; Kauffman v. Railroad, 67 Mo. App. 156; Fullerton v. Railroad, 84 Mo. App. 498; Knoche v. Railroad, 86 Mo. App. 572. The burden of proof, that is, the burden of ultimately establishing the fact, was then cast on the defendant to show that a sufficient cause existed for leaving the right of way and tracks unfenced at that point. Cox v. Railroad, 128 Mo. 371; Ellis v. Railroad, 89 Mo. App. 241; Riley v. Railroad, 89 Mo. App. 375; Glasscock v. Railroad, 82 Mo. App. 146. After such a prima-facie case was made the trial court could not take the case from the jury, though no witness contradicted the oral testimony offered by defendant to show such excuse, because plaintiff had a right to have the jury (or the trial court sitting as a jury) to pass on the credibility of those witnesses whose evidence they were not bound to believe. Gannon v. Gas Co., 145 Mo. 502; Seehorn v. Bank, 148 Mo. 265; Hendrickson v. Grafe, 157 Mo. 48; Schroeder v. Railroad, 108 Mo. 326; Waggoner v. City of Gorin, 88 Mo. App. 33; Harris v. Box Co., 87 Mo. App. 438; Kingsbury v. Joseph, 94 Mo. App. 304; Kenny v. Railroad, 79 Mo. App. 207; Johnson v. Kahn, 71 S. W. 726; Chinn v. Railroad, 75 S. W. 377; Hugumin v. Hinds, 71 S. W. 482. (2) There were physical facts and circumstances in evidence tending to show that no such necessity existed, and all the testimony offered by defendant in support of its excuse was that of experts testifying solely as a matter of opinion, and was expert testimony. Goins v. Railroad, 47 Mo. App. 181; Rog. Exp. Test., sec. 1; 1 Greenl. Ev., sec. 441b.

VALLIANT, J.—Plaintiff sues under section 1106, Revised Statutes 1899, to recover the value of his mare killed by falling off of a railroad bridge belonging to defendant.

The facts shown by plaintiff's evidence are substantially as follows:

197 Sup.—21

A public road crosses the railroad at a point just east of the village of McBaine in Boone county. On each side of defendant's railroad east of the public road was a fence enclosing the right of way. There was at this time no cattle-guard or wing fences at this crossing to prevent animals entering upon the tract or right of way. Such cattle-guard and wing fences had been there originally when there was only the main track of the railroad, but for a year or more and after the building of the Columbia Branch track there were three, that is one main track and two side or switch tracks crossing this public road, and when those two additional tracks were put in, the cattle-guard and wing fences were removed. There is a switch at each end of each one of these side tracks; those at the west ends were west of the crossing, and those at the east end were east of the crossing.

About seven or eight o'clock in the evening of September 1, 1901, plaintiff's mare got loose from a post in the village at which she had been hitched and strayed onto the railroad, entering presumably at this crossing and going east. Shortly afterwards a freight train came along going east; the next morning the mare was found dead in the bed of a dry creek near a bridge from which she had apparently fallen.

The evidence on the part of defendant tended to show that in the movement of its trains it was necessary for its employees in operating these switches to pass on foot over the tracks at this crossing, and that a cattle-guard there would endanger their lives. Defendant's testimony also showed that as this freight train was going along that night the engineer saw the horse on the track in front running toward the bridge; that he "slowed up" his train, and the animal went on ahead and got out of sight; the engineer knowing that there was a bridge in front of him and realizing the danger to himself and his train of encountering an animal on the bridge, stopped the train and he and the

head brakeman went forward to reconnoiter, and when they got to the bridge they found that the mare had jumped or fallen off and was lying under it.

The cause was tried by the court, jury waived; there was a judgment for the plaintiff for $150, and defendant appealed to the Kansas City Court of Appeals, where the judgment was reversed on the ground that the uncontradicted evidence on the part of the defendant having shown that a cattle-guard at that crossing would endanger the lives of the railroad employees operating the switches it was not negligence on the part of the defendant not to have a cattle-guard there, but one of the judges of that court deeming that ruling contrary to the decision of this court in Gannon v. Gas Co., 145 Mo. 502, the cause was certified to this court.

Section 1106, Revised Statutes 1899, on which this action is founded, is as follows: "Whenever any live stock shall go in upon any railroad or its right of way, in this State, and the said railroad is not at such place or places inclosed by a good fence on both sides of said railroad, such as is by law required, and such stock, by being frightened or run by any passing locomotive or train on said railroad, shall be injured or killed by or because of having run against the fence on either side, or into any culvert, bridge, slough or mire, or other object along the line of said road, the railroad company shall pay the owner of any such stock so injured or killed the damage sustained."

According to the interpretation that this court and our Courts of Appeals have in several cases put upon that statute no liability will attach to a railroad company for failure to put a cattle-guard in a place where to do so would endanger the lives or limbs of its employees.

There is no such express exception written in the statute, but to construe it otherwise would make its meaning unnatural. [Pearson v. Railroad, 33 Mo.

App. 543; Jennings v. Railroad, 37 Mo. App. 652; Crenshaw v. Railroad, 54 Mo. App. 233; Grant v. Railroad, 56 Mo. App. 65; Webster v. Railroad, 57 Mo. App. 451; Hurd v. Chappell, 91 Mo. App. 317; Lewis v. Railroad, 59 Mo. 495; Morris v. Railroad, 58 Mo. 78; Hamilton v. Railroad, 87 Mo. 85.]

In the case last cited it was held that when the plaintiff's evidence showed that the defendant had failed to fence the track as the statute required, the burden was on the defendant to show circumstances exempting it from the performance of that duty. That holding is in accordance with the general rule that when a plaintiff has made out a prima-facie case the burden is on the defendant to contradict or avoid it. When the defendant says in effect: ''True it is we did not have a cattle-guard at that point, but we are not liable under the terms of that statute, because a cattle-guard at that point would endanger the lives of our employees whose duties require them to pass over it,'' the defense is an affirmative one and the burden of proving it is on the defendant. But that burden is not cast on the defendant until the plaintiff makes out a prima-facie case.

We have a familiar example of this issue when a plaintiff sues for damages for personal injuries caused by defendant's negligence and there is a plea of contributory negligence; if the plaintiff in such case makes a prima-facie showing by his evidence, the burden of proving the facts constituting the contributory negligence is on the defendant; but if the plaintiff in his effort to make out his case himself shows that he was guilty of negligence that contributed to the result, he cannot recover and the court will so declare. But if the plaintiff, having otherwise made his prima-facie case, shows by his evidence a state of facts from which an inference of his own negligence may be drawn but not necessarily so, a state of facts from which two different opinions might reasonably be drawn, then the question of contributory negligence goes to the jury. In the

Gilpin v. M. K. & T. Ry. Co.

supposed case we would have two issues, viz: was the defendant negligent? if yea, was the plaintiff also negligent? The burden of proof in the one would be on the plaintiff; in the other, it would be on the defendant.

Those issues are separate and do not necessarily depend the one on the other; the evidence may show that the plaintiff was not guilty of contributory negligence at all, yet unless it shows that the defendant was guilty of negligence the plaintiff cannot recover. The evidence must make a prima-facie case for the plaintiff.

What is a prima-facie case? The following answers have been given to that question: "A prima-facie case is one which is established by sufficient evidence, and can be overthrown only by rebutting evidence adduced on the other side." [2 Abbott's Law Dic., 312.] "A prima-facie case is that which is received or continues until the contrary is shown." [22 Am. and Eng. Ency. Law (2 Ed.), p. 1294.] Prima-facie evidence. "It is such as, in judgment of law, is sufficient to establish the fact; and, if not rebutted, remains sufficient for the purpose." [Kelly v. Jackson, 6 Peters 632.] "Prima-facie evidence of a fact is such evidence as in judgment of the law is sufficient to establish the fact, and if not rebutted remains sufficient for the purpose." [Smith v. Burrus, 106 Mo. 100.]

When we come to judge the plaintiff's case in the light of a demurrer to the evidence we must take his evidence for truth and credit him with every inference that can fairly be drawn from the facts shown. It is not necessary that the inference the plaintiff seeks to draw is the only one that can in reason be drawn from the facts shown; it is sufficient if from those facts the inference may fairly and reasonably be drawn. But a prima-facie case must be complete in itself. If it depends on an inference to be drawn, the facts shown in evidence must be sufficiently explanatory of themselves to justify the inference; if the evidence goes no further

than to show a condition from which the defendant might or might not be judged to be in fault, as further developments might show, and the plaintiff leaves the subject at that point, he has not made out his case; if from the case made the inference the plaintiff seeks to draw cannot be drawn without further facts or explanation he is not entitled to throw on the defendant the burden of proving that the undisclosed facts are such as forbid the inference the plaintiff seeks to draw.

In the case at bar the plaintiff's evidence showed that there was no cattle-guard at that opening in the fence and by that fact the mare got on the track and was killed; if the evidence had stopped there it would have shown a prima-facie case of negligence on the part of defendant.  But in order to show the condition of the crossing in that particular, it became necessary for the plaintiff to show the whole condition and in doing so he showed a condition which spoke for itself and which suggested the question, could a cattle-guard be maintained there without imperiling the lives of the railroad employees whose business required them to walk over it?  The plaintiff sought to leave the subject at that point without any further evidence or explanation.  If that condition had not been shown in the plaintiff's evidence he could have rested his case on the simple fact of the absence of the cattle-guard, and have thrown the burden of proving that condition on the defendant, but with that fact in the case and no explanatory evidence on the point, the plaintiff was not entitled to ask the trier of the fact to find that a cattle-guard could have been maintained there with reasonable safety to the railroad employees.

The court trying the fact was not bound to say that there was no evidence that a cattle-guard in that position was dangerous to the lives of the railroad employees simply because there was no expert evidence introduced on the subject. The thing itself spoke. Men know by common experience what a cattle-guard

is, as well as they know what a fence is; they also know what a switch in a railroad is; they know the purposes of those things and how they are used. We need no expert testimony to tell us that a cattle-guard in a switch-yard would endanger the lives of the men working there.

As an example of the wisdom of expert evidence on a question of that kind may be taken from the testimony of one of plaintiff's witnesses who was gravely asked whether or not in his opinion a man while turning the switch at one end of these side tracks would be in danger of getting caught in a cattle-guard at this crossing a hundred yards or more distant, and the witness as gravely gave it as his expert opinion that a man in that act was in no danger from that source.

The same witness, however, when asked about the manner in which the work was done in that yard, said: "When they switch trains from one track to another, the men that do the work of switching have to pass along on the ground; the brakemen get off of the train and walk along the ground back and forth; they have to throw the switch, then they have to wait on the ground for the train to pass on the switch and then get back on the train. If there was a cattle-guard there it would make it much more dangerous for the trainmen who have to do the work along there. They would be in much more danger of falling in and being caught in there as they were going along making the switch."

This was a part of the evidence for the plaintiff on which he relies for his prima-facie case.

We hold that the plaintiff's evidence itself showed that a cattle-guard at that point would be dangerous to the lives of the railroad men whose duties called them to pass over it on foot at all hours in the day or night, and, therefore, the defendant was not liable for failing to put a cattle-guard in that place. The instruction in the nature of a demurrer to the evidence should have been given. The judgment is reversed. All concur.