[Civil No. 1410.  Filed December 29, 1914.]

[145 Pac. 246.]

## MARIE NOLTE, HUGO J. DONAU and L. H. HOFMEISTER, Appellants, v. E. B. WINSTANLEY, Appellee.

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS—VALIDITY—CONFORMITY TO STATUTE.—A general assignment for the benefit of creditors, which does not show that the assignor was insolvent, does not give a list of the creditors, and is otherwise defective as a statutory assignment, may nevertheless be valid as a common-law assignment and is not forbidden by statute.

2. ASSIGNMENTS FOR BENEFIT OF CREDITORS—VALIDITY—CHANGE OF POSSESSION—"PRIMA FACIE EVIDENCE."—Under Civil Code of 1913, paragraph 3276, providing that every assignment of chattels not accompanied by immediate delivery and change of possession is *prima facie* evidence of fraud for the benefit of creditors or *bona fide* purchasers, a creditor who attached property after an assignment for the benefit of creditors, unaccompanied by change of possession, is entitled thereto, unless the statutory presumption of fraud is rebutted, since *prima facie* evidence is such evidence as in law is

sufficient to establish a fact and, if not rebutted, remains sufficient for that purpose.

3. FRAUDULENT CONVEYANCES—ASSIGNMENT FOR BENEFIT OF CREDITORS—CHANGE OF POSSESSION.—The fact that the assignment shows on its face that it is for the benefit of creditors does not rebut the *prima facie* presumption of fraud, where the property assigned consisted of a stock in trade and fixtures, and the assignor remained in possession thereof conducting the business and keeping the proceeds of sales of the stock.

4. FRAUDULENT CONVEYANCES—ASSIGNMENTS FOR CREDITORS—CHANGE OF POSSESSION—RIGHTS OF PARTIES.—An assignment for the benefit of creditors, which is *prima facie* void against creditors because there was no change of possession, is sufficient to pass the title between the parties.

5. FRAUDULENT CONVEYANCES—CHANGE OF POSSESSION—SALE TO WIFE.—Where a baker assigned his stock and fixtures to an assignee for the benefit of creditors, and the latter, without having taken possession, sold it to the assignor's wife, who had assisted her husband in the business, and the sign on the place of business was not changed, nor was there any apparent change in the relation of the husband and wife to the business, although the husband claimed to be in the employ of his wife, the transaction should be treated as one between the husband and wife directly, and is *prima facie* void against the husband's creditors.

6. FRAUDULENT CONVEYANCES—CHANGE OF POSSESSION—SALE TO WIFE.—While a husband may sell his property to his wife, the statute rendering a sale *prima facie* void unless accompanied by delivery and change of possession, applies to such sale, and the law requires stricter proof that the transaction was in good faith.

7. FRAUDULENT CONVEYANCES—RETENTION OF POSSESSION—QUESTIONS OF FACT—FRAUD.—Under the statutes making a sale of a stock of goods and fixtures, where there was no change of possession, *prima facie* void, the question of good faith in the transaction is one of fact for the trial court or the jury.

8. EVIDENCE—DECLARATIONS—RECITAL.—Where a baker assigned his stock and fixtures to an assignee for the benefit of his creditors, and the assignee thereafter sold the property to the baker's wife, a recital in the bill of sale to the wife that the money paid by her was her separate property is not evidence of that fact.

9. CONSTITUTIONAL LAW—FRAUDULENT CONVEYANCES—BULK SALES ACT—POLICE POWER—CLASS LEGISLATION.—The Bulk Sales Act (Civ. Code 1913, tit. 51, c. 7) is a proper exercise of the police power and not class legislation.

10. FRAUDULENT CONVEYANCES—EFFECT OF PARTIAL INVALIDITY—BULK SALES ACT—FIXTURES.—Where a baker sold his stock in trade and

fixtures, the sale of the stock being void under the Bulk Sales Act, the sale of the fixtures may nevertheless be valid.

[As to construction of statutory provision that sales of goods in bulk are presumed fraudulent, see note in Ann. Cas. 1913C, 1214.]

APPEAL from a judgment of the Superior Court of the County of Pima. W. F. Cooper, Judge. Affirmed.

The facts are stated in the opinion.

Mr. Charles Blenman, for Appellants.

Mr. Frank E. Curley, for Appellee.

ROSS, J.—This is an action to try the title to personal property under the provisions of paragraphs 1648 et seq., Civil Code of 1913.

On the 24th day of May, 1912, and for some time theretofore, J. J. Nolte was the owner of and carrying on a bakery and confectionery business in the city of Tucson. On that day he transferred and assigned by an instrument in writing all of said business, including furniture, delivery wagons and horses, and all stock in trade to Alexander Rossi in trust, with instructions that the trustee sell and dispose of the same on such terms and conditions as he should see fit and divide the proceeds of sale *pro rata* between Nolte's creditors. Rossi thereafter on June 3, 1912, sold all said property to Marie Nolte for $750, and Marie Nolte on the same day caused her bill of sale to be recorded in the recorder's office of Pima county. On June 5, 1912, appellee, as the assignee of the accounts of three of J. J. Nolte's creditors, instituted suit against Nolte and caused all of said property to be levied upon by attachment. Marie Nolte took necessary steps under paragraph 1648, *supra,* to claim the property as hers. The other appellants, Donau and Hofmeister, were her bondsmen. Issues were formed as provided by paragraphs 1659 and 1660, Revised Statutes of Arizona of 1913 (Civil Code), the appellee asserting in his complaint that J. J. Nolte was the owner of and in the use and possession of said property, and the appellant Marie Nolte claimed title to the property in her answer by virtue of bill of sale from Rossi. The case was tried to the court upon an agreed statement of facts and is

here upon the same statement of facts. From a judgment in favor of appellee, this appeal is prosecuted.

In addition to the foregoing facts, it is stipulated that the bill of sale or deed of trust from J. J. Nolte to Rossi was not filed or recorded with the county recorder of Pima county, but that the trustee caused to be published in the "Arizona Daily Star," a paper of general circulation, published in the city of Tucson, on May 30th, 31st and June 1st and 2d, a notice of the assignment to him by J. J. Nolte, and that he would receive bids at his place of business up to noon June 3, 1912, "for the purchase of all of the assets of the business of said J. J. Nolte."

None of the creditors had accepted the terms of the trust deed at the time of the attachment. The facts stipulated with reference to change of possession are as follows:

"That during all the times herein mentioned, including the 24th day of May, 1912, and up to and including the 3d day of June, 1912, the said personal property remained in said building at Nos. 19–21 South Stone avenue, in the possession of said J. J. Nolte. Marie Nolte, who is and was at all times herein mentioned the wife of said J. J. Nolte, claims that upon receipt of said bill of sale from Alex Rossi on June 3, 1912, she immediately took possession of the said personal property herein referred to and continued from said date to conduct said bakery and confectionery business. Prior to June 3, 1912, said J. J. Nolte, who was a baker by trade, did the baking for said business, conducted as 'Nolte Bakery and Confectionery,' but was assisted by his said wife, Marie Nolte, who spent the greater portion of each day in and about said bakery. After the execution of said bill of sale by Alex Rossi, the said bakery business was continued at 19–21 South Stone avenue, to all outward appearances, as formerly. J. J. Nolte continued to do the baking for said business, and said Marie Nolte continued to do the same work around said bakery as formerly. She claims, however, that from the time of the execution of said bill of sale by Alex Rossi she was in possession and control of said business and personal property herein referred to, and that her husband, J. J. Nolte, was working for her. Neither plaintiff, E. B. Winstanley, nor J. Ivancovich Company, Brena Commercial Company, nor J. F. Barker Company (appellee's assignors) had any notice

of this claim on the part of Mrs. Nolte, other than may be implied from the fact that the bill of sale from Rossi to Mrs. Nolte was recorded in the office of the county recorder of Pima county on June 3, 1912. That for many months prior to the 24th day of May, 1912, J. J. Nolte had a large sign in front of his place of business 19–21 South Stone avenue, containing the words 'Nolte.' That after the 24th day of May, 1912, and up to and including the 5th day of June, 1912, at the time the attachment was levied upon the property herein described, the said sign was permitted to remain in front of the said building, and so remained at all times."

The bulk sales law, being chapter 47, Laws of 1909 (paragraphs 5249 and 5250, Civil Code of 1913), was not observed in the sale of J. J. Nolte to Rossi.

The assignment to Rossi by Nolte did not conform with the requirements of the statutes as to assignments for the benefit of creditors. The deed of assignment does not show that the assignor was insolvent, nor that the property assigned was all of his property, and fails to give a list of the names of his creditors, and is otherwise defective as a statutory assignment for benefit of creditors. Such an assignment, however, is valid under the common law and is not forbidden by statute.

Pomeroy, Equity Jurisprudence, section 994, says:

"The doctrine is generally settled in this country that voluntary general assignments for the benefit of creditors, if otherwise valid, are not mere agencies of the debtor, they create true trust relations, and the creditors are true beneficiaries. When once duly executed, they are irrevocable, and the creditors, on being informed of their existence, may take advantage of the provisions in their own favor, and may enforce the trusts declared without making themselves parties or doing any act indicating their own acceptance or assent. . . . The doctrine generally prevails in the American states that, unless prohibited by statutes, voluntary general assignments by failing debtors for the benefit of their creditors, even when preferring individuals or classes among the beneficiaries, are valid."

It is contended by appellee that the assignment was not effective to pass title, as against creditors, for several reasons: First, he says that there was no change of possession from the

debtor to the trustee, as required by paragraph 3276, Civil Code of 1913. That paragraph reads as follows:

"Every sale made by a vendor of goods and chattels in his possession or under his control, and every assignment of goods and chattels unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of things sold or assigned, shall be *prima facie* evidence of fraud as against the creditors of the vendor, or the creditors of the person making such assignment, or subsequent purchasers in good faith."

According to the stipulated facts, "the person (Nolte), making such assignment" remained in the possession of all of the goods and chattels from the date of the assignment, May 24th, until June 3, 1912. There was no delivery whatever and no change of possession from Nolte to the assignee. Such a state of facts is made *prima facie* evidence of fraud as against the creditors of the person making such assignment. The entire absence of a delivery to the assignee, and he never having taken possession, either actual or constructive, the appellee, as a creditor of the assignor upon such a showing has made out a *prima facie* case entitling him to recover, unless the presumption of fraud is rebutted.

In *Gilpin* v. *Missouri, K. & T. Ry. Co.*, 197 Mo. 319, at page 325, 94 S. W. 869, at page 871, the court defines a *prima facie* case and *prima facie* evidence as follows:

" 'A *prima facie* case is one which is established by sufficient evidence and can be overthrown only by rebutting evidence adduced on the other side.' 2 Abbott's Law Dict. 312. 'A *prima facie* case is that which is received or continues until the contrary is shown.' 22 Am. & Eng. Ency. of Law, 2d ed., p. 1294. *Prima facie* evidence: 'It is such as, in judgment of law, is sufficient to establish the fact and, if not rebutted, remains sufficient for the purpose.' *Kelly* v. *Jackson*, 6 Pet. 632, 8 L. Ed. 523. '*Prima facie* evidence of a fact is such evidence as in judgment of the law is sufficient to establish the fact, and if not rebutted remains sufficient for that purpose.' *Smith* v. *Burrus*, 106 Mo. 100, 13 L. R. A. 59, 27 Am. St. Rep. 329, 16 S. W. 881."

If it should be suggested that the deed of assignment on its face—it being for the benefit of creditors without any preference shown—is a refutation of any inference of fraud,

still the fact exists that the assignor was left in possession of the property with the opportunity and apparent right of disposition. What was realized in this *interim*, if anything, out of the business does not appear as an asset of the assignee. From the conduct of both the assignor and assignee, it would seem that the latter was recognized and treated more as a medium of passing title to the property than as a trustee having certain and definite duties to his beneficiaries, the creditors. It was the duty of the trustee, upon accepting the trust, to take all of the property into his possession and to preserve and hold the same and all of it for the creditors of the assignor. This he did not do, but, on the contrary, left the property in the possession of the debtor, who, as it appears, did not dispose of it all, but who could have done so, if he had so chosen. We conclude that the *prima facie* case of fraud arising because of no delivery followed by actual and continued change of possession of the things assigned has not been overcome or rebutted, and that, as to the nonconsenting creditors of the assignor, the assignment was ineffectual.

As between the assignor Nolte and the assignee Rossi, the instrument of May 24, 1912, passed title from the one to the other. It was ineffectual to pass title only as against creditors of the assignor. Had the attachment been levied on the property before the assignee sold it to the appellant Marie Nolte, and while it was in the actual possession of the debtor J. J. Nolte, the attachment lien, it would seem, could not have been successfully questioned.

But the attachment was not levied upon the property until June 5, 1912, and two days after the assignee had sold the business to Marie Nolte, who paid therefor the sum of $750. We think the transaction should be treated as one directly taking place between the Noltes, and that the bill of sale from the assignee to Marie Nolte was in effect the act of the debtor J. J. Nolte, for the reason that there was no delivery or change of possession. In that view of the case, the title to the property passed to appellant Marie Nolte exempted from the claims of creditors of the seller, providing there was an immediate delivery, followed by an actual and continued change of possession, as required by paragraph 3276, *supra*. This, it may be said, is especially true of all of the property,

except such as is daily exposed for sale as merchandise in small quantities for profit. That J. J. Nolte continued in possession of the property during all the time consumed in this transaction there seems no question. The stipulation is that:

"After the execution of said bill of sale by Alex Rossi, the said bakery business was continued at 19–21 South Stone avenue, to all outward appearance, as formerly."

There was no change of the personnel of the parties in charge of the business. The sign in front of the place of business remained the same. As against the actual evidences of possession remaining unchanged is the bare claim of the purchaser that she took possession and control of the business after the execution of the bill of sale to her. The change of possession should be open and unequivocal, carrying with it the usual marks and indications of ownership by the party purchasing the goods. It must be such as to give evidence to the world of the claims of the new owner, so that a stranger to the sale would be able at once to see that a change in the possession and ownership of the property had taken place.

"The statute demands that, in order that such sale may be *bona fide,* it shall be accompanied by immediate delivery and such actual and continued change of possession as shall indicate by outward, open, and visible signs that can be seen and known to the public or persons dealing with the property that a change of ownership and possession has taken place." *Ellet-Kendall Shoe Co.* v. *Ross,* 28 Okl. 697, 115 Pac. 892.

In *Wheeler* v. *Seldon,* 63 Vt. 429, 25 Am. St. Rep. 771, 12 L. R. A. 600, 21 Atl. 615, it is said:

"Where there is a joint possession by the vendor and the vendee, the property is liable to attachment upon the vendor's debts, if a candid observer would be at loss to determine which of the two has the chief control and possession of it, and, in case of doubt, the law resolves the doubt against the party who should make the change of possession open and visible. *Flanagan* v. *Wood,* 33 Vt. 332. The reason of the rule, which is to prevent fraudulent transfers of property, applies more strongly to transactions between husbands and wives than to those between other persons because of the

greater facility for the commission of frauds of this character between the former.''

This does not mean that the law forbids the husband selling his property to the wife, or the wife from purchasing property from her husband. Under the law, they have the same rights of purchase and sale of property between each other as they have to deal with total strangers, but in doing so they are required to observe the rules of law and evidence that are exacted of others, to effectually pass title from the one to the other, where the rights of creditors are involved.

Under our statute, the failure to deliver goods and chattels sold or assigned and the failure of the purchaser to take actual and continued possession of the property is only ''*prima facie* evidence of fraud as against the creditors of vendor'' or assignor, and it is made the duty of the trial court or jury to decide that question in the first place.

Construing a statute of similar import to ours, the supreme court of Nebraska, in *Densmore* v. *Tomer*, 11 Neb. 118, 7 N. W. 535, said:

''The mere retention of possession by the vendor is regarded as *prima facie* evidence of fraud against his creditors, and is void as to them, unless the vendee shall prove the transaction to have been *bona fide*—that is, it puts upon the vendee the burden of satisfying the jury that the sale was fair and entered into in good faith. The question of fraudulent intent is one of fact to be determined from the evidence in the case. In but few instances can fraud be established by direct testimony, and ordinarily it must be proved by circumstantial evidence.''

In *Stadtler* v. *Wood*, 24 Tex. 622, the court said:

''Where the vendor of the property and the vendee live together, there should be the most indisputable evidence of good faith in the contract of sale, for from the very nature of things it is almost impossible to tell with whom the possession of the property does in fact remain.''

There is nothing in the stipulation of facts to show that the $750 paid to Rossi was the separate property of the appellant Marie Nolte. True, the bill of sale to her from Rossi recites that it is her separate property, but that is only the declaration of Rossi, doubtless inserted at her suggestion, and

therefore is no evidence of her ownership of the money paid as against creditors of her husband.

In *Seitz* v. *Mitchell,* 94 U. S. 580, 582, 24 L. Ed. 179, the court said:

"Purchases of either real or personal property made by the wife of an insolvent debtor during coverture are justly regarded with suspicion, unless it clearly appears that the consideration was paid out of her separate estate. Such is the community of interest between husband and wife; such purchases are so often made a cover for a debtor's property, are so frequently resorted to for the purpose of withdrawing his property from the reach of his creditors and preserving it for his own use, and they hold forth such temptations for fraud, that they require close scrutiny. In a contest between the creditors of the husband and the wife there is, and there should be, a presumption against her which she must overcome by affirmative proof. Such has always been the rule of the common law; and the rule continues, though statutes have modified the doctrine that gave to the husband absolutely the personal property of the wife in possession, and the right to reduce into his possession and ownership all her choses in action."

If a transaction of this kind may be sustained as against the creditors of the seller of goods and chattels, it amounts to an approval by the courts of an arrangement by which a debtor, whether solvent or insolvent, may place a value upon his property and for that value paid him by his wife transfer the property to her, and with the money thus paid him compel his creditors to prorate it upon their claims. Having done this, he may resume business, if, indeed, he has ever suspended it, at the "old stand" without visible changes, and, by a claim of change of ownership to his wife, acquit himself of his just debts.

It was peculiarly the province of the trial court to determine if the transaction was *bona fide* and for a valuable consideration paid by the purchaser out of her separate property, and, that court having resolved the question against the appellant, we are satisfied to let it stand.

. Part of the goods sold consisted of stock in trade. The requirements of chapter 7, title 51, Civil Code of 1913, being chapter 47, section 1, Laws of 1909, were not complied with.

That chapter prohibits a person who makes it his business to buy commodities and sell the same in small quantities for the purpose of making a profit, from disposing of his stock in trade, or a large part thereof, in a single transaction, and not in the regular course of business, unless notice of intention to sell is filed with the county recorder not less than ten days before the sale. A sale made without complying with the formalities required is declared to be void as to all creditors of the vendor at the time of such transaction. This is what is known as the "bulk sales law," and it, or ones very similar to it, have been adopted in many of the states. While their validity as police regulations and as being class legislation have been often questioned in the courts, we think it is now well settled that such acts are a proper exercise of the police power of the states, and that they are not class legislation.

The most recent decision on the bulk sales law is by the Nevada court in *Boise Assn. etc.* v. *Ellis,* 26 Idaho, 438, 144 Pac. 6, decided October 29, 1914. In that case the court sustains the law and cites many of the decisions of courts of other states and the United States supreme court upholding the law. We are satisfied with the reasoning and conclusion of those courts.

The terms of the statute, however, do not include much of the personal property described, such as fixtures, wagons, teams and implements of manufacture used in the trade and not daily exposed for sale and as to these articles, if the sale had been in other respects legal, the title would have passed to appellant.

Finding no error, the judgment of the trial court is affirmed.

FRANKLIN, C. J., and CUNNINGHAM, J., concur.