[Civil No. 3236. Filed November 16, 1932.]

[15 Pac. (2d) 964.]

THE BANK OF NORTHERN ARIZONA, a Corporation, Insolvent, JAMES B. BUTTON, as State Superintendent of Banks, and J. H. FROST, Special Deputy Superintendent of Banks, in Charge of THE BANK OF NORTHERN ARIZONA, a Corporation, Insolvent, Appellants, v. MARION V. GIBBONS, as Administrator of the Estate of JOHN LEWIS, Deceased, Appellee.

Messrs. Favour & Baker and Mr. Don T. Udall, for Appellants.

Mr. Dodd L. Greer and Mr. Marion V. Gibbons, for Appellee.

ROSS, J.—This action is one for the possession of real property and damages for its retention. The defendants are James B. Button, state superintendent of banks, and his deputy, J. H. Frost, who are alleged to be in possession of the property, claiming to own it. The plaintiff is the administrator of John Lewis, deceased. The case was tried before the court with a jury. There was no general verdict. The jury answered certain special interrogatories, some of which answers were adopted by the court in its findings of fact. The judgment entered was in part in favor of plaintiff, and defendants have appealed.

The testimony was not made a part of the record, the defendants contending that the judgment is contrary to the special verdicts of the jury and the findings of the court. The pleadings, the special verdicts, and the court's findings show the following facts: In 1919 the deceased, John Lewis, who was operating a store at Taylor, Navajo county, Arizona, applied to the Bank of Northern Arizona for financial assistance to prevent his creditors from closing him out. At the time he owned or held under a contract of purchase in the town of Taylor a few acres of land upon part of which was located his store building and upon another separate part his dwelling occupied by himself and family. He also owned 160 acres of land located at Pinedale, which we shall hereafter refer to as the Pinedale Ranch. On April 11, 1919, he signed and delivered the following instrument to the Bank of Northern Arizona:

"In consideration of the fact that you are coming to the rescue of my business, and saving a vexatious law-suit, and probable loss to the same, I will turn over, amicably, to your representative, Mr. James J. Shumway, the store (Cash Store) at Taylor, with

the mdse. now on hand, the cash in the tills, the ground adjacent, and the property upon which you have mortgage already; and will give you my assistance, and good-will in making the business pay for itself. With the distinct understanding that you, on your part, will credit every asset that I produce on my account at the Bank.

"The mdse. in stock is to be inventoried at the selling price, with a reduction of 25%.

"Very truly yours,
"[Signed] JOHN LEWIS.

"The 'ground adjacent' means all of the lot to the partition fence, and the lane to the ditch."

On April 11, 1919, Lewis's indebtedness amounted to approximately $16,000. He owed the Bank of Northern Arizona one note dated July 3, 1917, for $6,000, bearing interest at nine per cent., secured by mortgage on the Pinedale Ranch; one note dated February 5, 1918, for $2,583.87, unsecured; and one note dated February 5, 1918, for $2,550, unsecured; or all told $11,133.87. He owed Babbitt Brothers, Flagstaff, $4,000, who had sued and attached and taken possession of his real estate and the store and its contents at Taylor. He owed thirteen other wholesale houses approximately $1,800.

James J. Shumway, under the above authority, took possession of the store, the merchandise, and cash; also the real property in Taylor (except the dwelling-house and the land adjacent to it); also the Pinedale Ranch.

The bank paid Babbitts' claim of $4,004, and later paid the general creditors $729.38, or forty per cent. of their claims, and acknowledged that it had received $135 to apply on its indebtedness.

On May 8, 1919, Lewis and wife joined in a deed conveying the Taylor store and premises to the bank. On December 27, 1923, the defendant Button, as superintendent of banks, took over the Bank of Northern Arizona for liquidation and placed defendant Frost

in charge of the bank's assets, which included the Lewis property. The bank and the superintendent of banks as its receiver paid all the taxes on the Lewis real property, located in Taylor, until May, 1924, when it was conveyed to a third party, and on the Pinedale Ranch from May, 1919, to the time of the trial. Lewis died in 1924. The plaintiff, as administrator of his estate, in 1928 demanded of the defendant a return of the possession of the Pinedale Ranch and also the realty in Taylor.

Upon the above facts the court entered judgment in favor of plaintiff for the Pinedale Ranch and damages for its retention from August · 1, 1928, at $5 per month, until the premises are surrendered.

The defendant contends that Lewis made an assignment of all his property to the Bank of Northern Arizona for the benefit of his creditors, and that through such assignment the defendant, as the legal representative of the bank, obtained and holds possession of the Pinedale Ranch, and that it cannot be recovered from him by the assignor or his legal representative until his creditors have been paid off or satisfied.

While the writing of April 11, 1919, taken in connection with the subsequent acts of the parties thereunder, might well be treated as a common-law assignment for the benefit of the creditors of Lewis (*Nolte* v. *Winstanley,* 16 Ariz. 327, 145 Pac. 246), we prefer to dispose of the case upon another well-established and recognized principle of law. One of the court's findings is: ''That the said John Lewis delivered to said Bank the property described in said letter of April 11, 1919, for said Bank to operate for the purpose of paying off the obligations then owing by the said John Lewis aforesaid.'' There is no finding that the ''purpose'' for which the Pinedale Ranch was turned over to the bank had been accomplished. On the contrary the finding is that only $135 of what

Lewis owed the bank had been paid. Under such circumstances, clearly the administrator of Lewis would have no right to recover the mortgaged property. The rule, supported by many decisions including Arizona, is stated in 41 Corpus Juris 611, section 581, as follows:

"It is the unquestioned right of a mortgagee lawfully in possession to retain it until he has received full satisfaction of his mortgage debt, and this possession he may defend by appropriate actions, transfer or assign to a third person, or voluntarily surrender; but he does not lose his rights by being temporarily or involuntarily dispossessed, and he cannot be deprived of it by any act of the mortgagor or one claiming under him, short of a redemption or complete satisfaction of the mortgage debt, or a valid and sufficient tender thereof, or by a judgment creditor or purchaser at execution sale."

See, also, *Bryan* v. *Kales,* 162 U. S. 411, 16 Sup. Ct. Rep. 802, 40 L. Ed. 1020; Id., 3 Ariz. 423, 31 Pac. 517; *Provident Mutual Building-Loan Assn.* v. *Schwertner,* 15 Ariz. 517, 140 Pac. 495; 2 Jones on Mortgages, 7th ed., 99, § 715.

While section 2310 of the Revised Code of Arizona 1928 provides that the mortgagee is not entitled to possession of mortgaged premises, it recognizes the right of the parties to a mortgage to contract therein that the mortgagee may have the possession, and it also provides that after the mortgage is executed such an agreement is valid without any additional consideration.

It seems to us that the defendant should be permitted to retain possession of the Pinedale Ranch until the plaintiff pays the face of the mortgage on such property, or makes a proper tender thereof.

Plaintiff makes some contention to the effect that nothing was owing defendant. This is based upon a negative answer by the jury to the question: "Did John Lewis owe to the Bank of Northern Arizona

$11,133.87, as evidenced by his three certain notes in evidence?'' If any part of the debt represented by the notes had been paid, the negative answer to the question was correct. Lewis had paid on account $135. The answer therefore does not sustain the contention that the mortgage debt of $6,000 had been paid.

The judgment is reversed and the cause remanded, with directions to enter judgment for defendants.

McALISTER, C. J., and LOCKWOOD, J., concur.