NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

DEPARTMENT OF CHILD SAFETY, *Appellant*,

*v.*

DESHANNON B., D.B., *Appellee*.

No. 1 CA-JV 19-0262
FILED 4-30-2020

Appeal from the Superior Court in Maricopa County
No. JD33176
The Honorable Karen A. Mullins, Judge

**VACATED; REMANDED**

COUNSEL

Arizona Attorney General's Office, Tucson
By Dawn R. Williams
*Counsel for Appellant*

Robert D. Rosanelli Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellee DeShannon B.*

<hr>

**MEMORANDUM DECISION**

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge D. Steven Williams joined.

<hr>

**J O N E S**, Judge:

**¶1**      The Department of Child Safety (DCS) appeals the juvenile court's order denying its motion to terminate the parental rights of DeShannon B. (Father) to D.B. (Child). For the following reasons, we vacate the court's order, reverse its finding that DCS did not prove Father had abandoned Child by clear and convincing evidence, and remand for a determination of whether termination is in Child's best interests.

## FACTS AND PROCEDURAL HISTORY

**¶2**      Father is the parent of Child, born in 2011.[1] In September 2016, DCS took temporary custody of Child, who is deaf, and filed a petition alleging Child was dependent as to Father.[2] DCS alleged Father had not had any contact with Child "in the last six months or longer," failed to provide financial support to Child, and had "abandoned his child by failing to maintain a normal parental relationship with his son without just cause."

**¶3**      Father, who resided in California, appeared telephonically for a continued initial dependency hearing in December 2016. Father contested the allegations of the petition, indicating "he ha[d] contact with his child and provided clothing to [the child] in September." The juvenile court, in relevant part, directed Father to contact DCS before coming to Arizona so visitation could be arranged.

<hr>

[1]      "We view the facts in the light most favorable to upholding the juvenile court's order." *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010) (citing *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2 (App. 2008)).

[2]      DCS also alleged Child was dependent as to his mother (Mother), and Mother's parental rights were ultimately terminated in February 2019. She did not challenge the termination of her parental rights and is not a party to this appeal.

¶4        Subsequently, DCS "made several attempts to contact [F]ather to get visits started," and was unable to do so until July 2017. Father then cancelled or missed all scheduled visits with Child until September 2017. That four-hour visit was the first and only time Father saw Child in the year that had passed since the dependency action was filed.

¶5        In October 2017, at the contested dependency hearing, Father entered a no-contest plea regarding the allegations in DCS's petition. The court adjudicated Child dependent as to Father and adopted a case plan of family reunification.

¶6        In November 2017, over Father's objection, DCS changed physical custody of Child to Jerry R. (Placement), who had known Child since birth and recently relocated to Arizona to help Child get "out of foster care." During the six months before that, Placement had been making weekly trips from his home in California to visit Child in Arizona. Father did not visit Child while in Placement's care in Arizona — from November 2017 to June 2018.

¶7        In June 2018, Placement moved with Child to Blythe, California, less than two miles away from Father's home. By November 2018, Father had yet to visit Child in Blythe, and DCS moved to terminate Father's parental rights to Child on the grounds of abandonment pursuant to Arizona Revised Statutes (A.R.S.) § 8-533(B)(1);[3] see also A.R.S. § 8-531(1) (defining abandonment).[4] Father still did not visit Child until March 2019 — more than a year-and-a-half since his only other visit in September 2017 — and then visited him only two or three times before the June 2019 termination hearing.

¶8        At the June 2019 termination hearing, Father testified he saw Child "on a daily basis" when he picked up Child's half-sister from her mother's apartment "two doors away" from where Placement and Child

---

[3]        Absent material changes from the relevant date, we cite the current version of rules and statutes.

[4]        In March 2019, DCS filed an amended motion to terminate Father's parental rights, alleging an additional ground for termination pursuant to A.R.S. § 8-533(B)(8)(c) (providing for termination where a parent has been unable to remedy the circumstances that caused a child's out-of-home placement for fifteen months or longer). The juvenile court found DCS failed to prove termination was warranted on this ground. Because DCS does not challenge that ruling on appeal, it is affirmed.

lived in Blythe, California. On these occasions, Father would wave at or hug Child and "communicat[e] with him the best way [he] c[ould]." Although Father sometimes provided Child with toys or money, the ongoing DCS case manager, Placement, and even Father all testified that Father did not provide DCS or Placement any direct financial support for Child during the dependency.

¶9 After taking the matter under advisement, the juvenile court found that although DCS had presented *prima facie* evidence of abandonment by showing Father had not maintained a normal parental relationship with Child for more than six months without just cause, *see* A.R.S. § 8-531(1), DCS had nonetheless failed to prove that Father had abandoned Child by clear and convincing evidence. In relevant part, the court found:

> Father did not establish a parent-child relationship with the Child after the Child's birth, did not maintain regular contact with the Child throughout the course of this dependency action, and did not provide normal parental supervision. Over the course of the Child's life, Father has gone long periods of time, far more than the six[-]month presumptive period, making no effort to contact his Child. One could easily conclude that Father has not acted persistently to establish a relationship with the Child, choosing instead to wait until a mere few months before the severance adjudication to begin any real effort to establish a parental relationship.

> Nonetheless, [Placement] testified that Father is beginning to bond with the Child. And, while the court would have no difficulty concluding that it [] ha[s] been [Placement], rather than Father, that has persistently acted as a parent to this Child, abandonment does not turn on the best interests of a child alone. Moreover, DCS offered Father visitation at the start of this case, but did not arrange any visitation for Father once the Child relocated to Blythe. The DCS case manager simply told Father that if he had a problem setting up visitation with [Placement], he should contact her. DCS left Father to fend for himself. Father has now, though belatedly, attempted to do so, and has had at least some measure of success. Under these facts, while the court would have no trouble finding abandonment if Father had not attempted to re-engage in visitation in March 2019 and if the

standard of proof were less than clear and convincing, it cannot make such a finding under present circumstances and given the higher standard of proof.

DCS timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), 12-2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

¶10 DCS argues: (1) the juvenile court misinterpreted and misapplied the law when it found that although DCS had presented a *prima facie* case that Father had abandoned Child, it had failed to prove abandonment by clear and convincing evidence, and (2) insufficient evidence supports the court's implicit finding that Father rebutted DCS's *prima facie* evidence of abandonment. *See Ariz. Dep't of Econ. Sec. v. Rocky J.*, 234 Ariz. 437, 441, ¶ 14 (App. 2014) ("The juvenile court will be deemed to have made every finding necessary to support the judgment.") (quoting *Matthew L.*, 223 Ariz. at 549, ¶ 7 (App. 2010)).

¶11 We review issues of statutory interpretation *de novo*. *Ariz. Dep't of Econ. Sec. v. Grant*, 232 Ariz. 576, 579, ¶ 5 (App. 2013) (quoting *Melgar v. Campo*, 215 Ariz. 605, 606, ¶ 6 (App. 2007)). We will affirm a "juvenile court's termination order 'absent an abuse of discretion or unless the court's findings of fact were clearly erroneous.'" *E.R. v. DCS*, 237 Ariz. 56, 58, ¶ 9 (App. 2015) (quoting *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004)). The court abuses its discretion when the record, "viewed in the light most favorable to upholding the trial court's decision, is devoid of competent evidence to support[] the decision." *Cook v. Losnegard*, 228 Ariz. 202, 205, ¶ 13 (App. 2011) (quoting *Little v. Little*, 193 Ariz. 518, 520, ¶ 5 (1999)). A finding is clearly erroneous if no reasonable evidence supports it. *Mary Lou C.*, 207 Ariz. at 47, ¶ 8 (quoting *Maricopa Cty. Juv. Action No. JV-132905*, 186 Ariz. 607, 609 (App. 1996)).

¶12 A juvenile court may terminate a parent's parental rights upon clear and convincing evidence "[t]hat the parent has abandoned the child." A.R.S. § 8-533(B)(1); Ariz. R.P. Juv. Ct. 66(C); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). "Abandonment" means:

> the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain

a normal parental relationship with the child without just cause for a period of six months constitutes *prima facie* evidence of abandonment.

A.R.S. § 8-531(1); *see also Michael J.*, 196 Ariz. at 249-50, ¶¶ 17-18 (noting that, under the statute, "abandonment is measured not by a parent's subjective intent, but by the parent's conduct: the statute asks whether a parent has provided reasonable support, maintained regular contact, made more than minimal efforts to support and communicate with the child, and maintained a normal parental relationship").

¶13 The juvenile court here found DCS proved "a *prima facie* case of abandonment . . . under A.R.S. § 8-531(1)." This finding is supported by the record, which reflects Father failed to communicate with or support Child for at least six months after the dependency was initiated. But, we reject DCS's general argument that presentation of a *prima facie* case compels a finding of clear and convincing evidence to sever on abandonment. To the contrary, when a *prima facie* case of abandonment is presented, it only creates a presumption in favor of the moving party; the burden then shifts to the parent to rebut the presumption of abandonment. *See Nolte v. Winstanley*, 16 Ariz. 327, 332 (1914) (holding, generally, that "[a] *prima facie* case is one which is established by sufficient evidence and can be overthrown only by rebutting evidence adduced on the other side") (quoting *Gilpin v. Mo., K. & T. Ry. Co.*, 94 S.W. 869, 871 (Mo. 1906)). Nevertheless, "once th[e] presumption [of abandonment] has attached," it may not be rebutted "merely by post-petition attempts to reestablish a parental relationship." *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 8 (1990). "Such an automatic rule would virtually eliminate any possibility of success for a petition in a contested termination action." *Id.* (citation omitted).

¶14 Applying these principles to the specific facts presented here, we agree with DCS that the juvenile court erred in concluding DCS had failed to present clear and convincing evidence of abandonment under A.R.S. § 8-533(B)(1). The record reflects that by the time DCS filed a motion to terminate Father's parental rights in November 2018, Child had been living with Placement less than two miles away from Father's home for five months. Despite this immediate proximity, Father had not visited Child a single time. Thereafter, Father waited another four months to initiate meaningful contact and then only visited with Child two or three times before the termination hearing. Moreover, while Father might have seen Child in the community after Placement moved with Child to Blythe, most of these interactions were extremely brief — no more than ten or fifteen

minutes. Father even admitted he did not "get to spend a lot of time with [Child] . . . because [Child]'s [usually] running around with [other] kids."

¶15 As noted, Father cannot rebut the presumption of abandonment with brief, accidental occasions of contact that occurred after DCS sought termination.[5] *See JS-500274*, 167 Ariz. at 8. Nor is DCS's diligence in assisting Father relevant; "neither [A.R.S.] § 8-533 nor federal law requires that a parent be provided reunification services before the court may terminate the parent's rights on the grounds of abandonment." *Bobby G. v. Ariz. Dep't of Econ Sec.*, 219 Ariz. 506, 510, ¶ 11 (App. 2008) (citing *Toni W. v. Ariz. Dep't of Econ Sec.*, 196 Ariz. 61, 64, ¶¶ 7-9 (App. 1999)). Finally, abandonment without just cause may be inferred from inaction. *See Toni W.*, 196 Ariz. at 67, ¶ 19 (citation omitted).

¶16 The record here indicates that although Father "tr[ied] to communicate with [Child]," he was unable to do so because Child would "run[] and play with [other] kids," and Placement made it difficult to see Child "[a]t times." Yet, Father admitted that he did not seek assistance from DCS to facilitate visitation, despite service letters from DCS encouraging him to engage in visitation with Child. And, while Father would sometimes give Child money or toys, there is no evidence in the record that DCS or Placement ever received direct financial support for Child during the dependency. In sum, though Father may have had visual contact with Child "on a regular basis" *after* Placement moved with Child to Father's neighborhood, these circumstances do not support a finding that Father had any sort of normal, supportive, or communicative parental relationship with Child.

¶17 The juvenile court did not point to any other evidence to support its conclusion that Father had rebutted the presumption of abandonment, and we discern none from the record. We thus conclude competent evidence does not support the juvenile court's implicit finding that Father rebutted the presumption of abandonment.

## CONLCUSION

¶18 We reverse the juvenile court's implicit finding that Father rebutted the presumption of abandonment and vacate the order denying

---

[5] To the extent the issue is raised on remand, we note that sincere post-petition efforts to reestablish a relationship may nonetheless be relevant to determining whether termination of parental rights is in a child's best interests. *See JS-500274*, 167 Ariz. at 8.

DCS's motion to terminate Father's parental rights. The matter is remanded for a determination as to whether termination of Father's parental rights is in Child's best interests. *See* Ariz. R.P. Juv. Ct. 66(C); A.R.S. § 8-533(B). The court has discretion to order additional evidence or argument it deems necessary to resolve the best-interests determination.



AMY M. WOOD • Clerk of the Court
FILED: AA