ROBERT A. McGRAY *vs.* ORRIN B. WOODBURY.

Waldo.    Opinion December *27, 1912.*

*Attachment. Assumpsit. Creditors. Contract. Exceptions. Lease. Mortgage.*
*Nonsuit.    Notice to Creditors.    Sale of goods in bulk.*

This is an action to recover for a stock of goods claimed to have been sold
by plaintiff in bulk and delivered to the defendant.  The plaintiff, who was
a grocer at East Knox, in January, 1912, occupying a store belonging to
defendant under a lease, entered into an agreement with Walter Wood-
bury to sell him the stock of goods at cost with a bonus of $60. An account
of the stock was taken and amounted to more than Woodbury thought he
would be able to pay, and thereupon the defendant, with consent of plain-
tiff took the stock off his hands.  Before the requisite notices to the
creditors could be mailed, the creditors attached the goods and the defend-
ant refused to pay for them.

*Held:*    That under such circumstances there was no sale of the goods to
the defendant.

The plaintiff contended that Chapter 114 of the Public Laws of 1905, which
requires full information to be given to creditors together with notice of
such sale is unconstitutional in that it deprives persons of their rights,
privileges and liberty to control their property and thus violates Section 6
of Article I of the Constitution of Maine.

*Held:*    That the objection stated is insufficient to justify the conclusion that
the act is unconstitutional.

On exceptions by plaintiff.    Overruled.

This is an action of assumpsit to recover for goods alleged to
have been sold and delivered to the defendant in January, 1912.
The plaintiff was at the time of the alleged sale a grocer at East
Knox and occupied, under a lease which was then in force, a store
owned by the defendant.  The stock of goods was under mortgage
to defendant.  The plaintiff and Walter Woodbury, a brother of
defendant, entered into an agreement for the purchase of the
goods at cost and a bonus of $60.  The stock amounted to more
than Walter Woodbury thought he could pay, and by consent of
plaintiff, the defendant undertook the purchase, but before the nec-
essary notices could be sent to creditors, the goods were attached

by them. Plea, the general issue. At the conclusion of the plaintiff's evidence, the Justice presiding ordered a nonsuit and the plaintiff excepted.

The case is stated in the opinion.

*Arthur Ritchie,* for plaintiff.

*Dunton & Morse,* for defendant.

SITTING: WHITEHOUSE, C. J., SPEAR, CORNISH, BIRD, HANSON, JJ.

HANSON, J. This is an action of assumpsit for goods sold and delivered, and comes to this court on plaintiff's exceptions to the ruling of the presiding Justice ordering a nonsuit.

The plaintiff was a grocer in East Knox, and occupied a store belonging to the defendant under a lease for five years. The lease was still in force. The defendant held a mortgage on the goods in the store for $200. There was a second mortgage for $50. The stock inventoried $775.79, plaintiff's debts amounted to $1161.81, and he had no other property. In January, 1912, the plaintiff entered into an agreement with Walter Woodbury, a brother of the defendant, to sell to said Woodbury the stock of goods at cost, and a bonus of $60. The plaintiff delivered the key to the store and the unexpired lease to the defendant. An account of stock was taken, and the amount being larger than the buyer anticipated, he expressed doubt as to his ability to pay. Thereupon the defendant offered to take "the stock off his hands." The plaintiff claimed that this offer was accepted and agreed to by him. The defendant says the offer was not accepted. Walter Woodbury went to Belfast the same day, and the next morning the plaintiff and defendant rode to Belfast together. On the way they met Walter Woodbury returning. There was a conference in which the defendant asked his brother "if he had made up his mind about the goods," and he testified: "I told him I had made up my mind to turn them over to him. He said he would take them off my hands and Mr. McGray said he was perfectly willing." The plaintiff and his witness are not in agreement as to this, the plaintiff claiming a sale to defendant at the store the day before.

On reaching Belfast, the plaintiff and defendant ascertained for the first time that it was necessary to notify the creditors of the

plaintiff, as provided in chapter 114 of the Public Laws of 1905. Advice of counsel was had and proper steps taken to make a valid sale. A list of creditors was then and there made and sworn to by the plaintiff and furnished to the defendant, and there was full understanding and agreement between the parties as to their further duty, one to the other. The largest creditor of the plaintiff was represented at the meeting in Belfast. In reference to this branch of the case the plaintiff was asked: "Q. Was it understood when that (the list of creditors) was made, that Mr. Woodbury would notify or send the list and notices to the creditors? A. That was the way I understood it. Q. You understood that he was not to pay for the goods until that had been done according to the statute, didn't you? A. Why, yes; yes. Q. He refused to pay anything that morning? A. Yes."

Whatever occurred at the meeting on the way to Belfast, or the day before at the store, was modified by mutual consent on reaching Belfast, both parties seeing the necessity of beginning over, and proceeding according to law. They undertook to comply with the law, but creditors, exercising their rights, attached the goods *within five days* from the date of the meeting at Belfast.

Under such circumstances there could be no sale to the defendant. That the plaintiff so concluded appears from his testimony. He says that, after the meeting at Belfast, and on leaving the office of Dunton and Morse, the defendant advised him "to go into bankruptcy," and that on his return to East Knox "he demanded the return of the lease and the key of the store from the defendant."

The plaintiff urges that Chapter 114, of the Public Laws of 1905, which requires full information to be given to creditors, together with notice of such sale, is unconstitutional, "in that it deprives persons of their rights, privileges and liberty to control their property," and thus violates Section 6 of Art. 1 of the Constitution of Maine. We are of the opinion that the objection stated is insufficient to justify the conclusion that the act is unconstitutional.

In *J. P. Squire Co.* v. *Tellier,* 185 Mass., 18, in which a similar statute was under consideration, the court say: "that the purpose of the Legislature evidently was to provide creditors protection against a class of sales which are frequently fraudulent and which leave creditors with no means of collecting that which they ought to

receive. The statute deals only with sales in bulk of a part, or the whole of a stock of merchandise, which are not made in the ordinary course of trade, and in the regular and usual prosecution of the sellers' business. It does not interfere with the transaction of ordinary business, but relates to unusual and extraordinary transfers. In substance it declares that a sale of this kind shall not be made without first giving creditors an opportunity to collect their debts so far as the property to be sold might enable them to collect, or subsequently make satisfactory provision for the payment of these debts.    .    .    .    That this is within a class of legislation for which there is constitutional authority is too plain for question.    .    .    .    The statute requires of the vendor nothing that cannot be done with reasonable effort. If he is unable or unwilling to pay his debts, it puts a substantial obstacle in his way when he wants to dispose of his stock of merchandise in bulk and receive payment for himself. But under such circumstances, the property in most cases ought not to be sold in bulk without first giving creditors an opportunity to consider what ought to be done with it."

*Lemieux* v. *Young,* 211 U. S., 489.

The nonsuit was properly ordered, and the entry will be,

*Exceptions overruled.*