(October 29, 1914.)

## THE BOISE ASSOCIATION OF CREDIT MEN, LTD., a Corporation, Appellant, v. T. R. ELLIS and THOMAS BUHL, Respondents.

[144 Pac. 6.]

Constitutional Law—Liberty of Contract—Class Legislation—Sale of Merchandise in Bulk—Due Process of Law—Fixtures—Merchandise—Police Power.

1. *Held,* that chap. 3 of title 10, Rev. Codes, which provides for "sales of goods in bulk," is a constitutional and valid law, that it does not constitute class legislation within the inhibition of the constitution, and that it is a proper and reasonable exercise of the state's police power.

2. *Held,* that a stock of goods, wares and merchandise, when sold in bulk, does not by implication include the fixtures as a part of the sales.

APPEAL from the District Court of the Seventh Judicial District for Washington County. Hon. Ed. L. Bryan, Judge.

In this action appeal was taken from the judgment of the lower court sustaining the demurrer to the complaint of appellant and denying the relief prayed for therein, and rendering judgment in favor of the defendant Thomas Buhl for costs of the action. Judgment *affirmed.*

Raymond L. Givens and Charles E. Winstead, for Appellant.

Statutes regulating the sale of stocks of goods, wares and merchandise in bulk have within a comparatively recent period been enacted in twenty-four states of the Union and by Congress for the District of Columbia.

A statute with the same object attained by a similar remedy has been held valid by the highest courts in Massachusetts, Connecticut, Tennessee, and Washington. (*John P. Squire & Co. v. Tellier,* 185 Mass. 18, 102 Am. St. 322, 69 N. E. 312; *Walp v. Mooar,* 76 Conn. 515, 57 Atl. 277; *Neas v. Borches,*

109 Tenn. 398, 97 Am. St. 851, 71 S. W. 50; *McDaniels v. J. J. Connelly Shoe Co.*, 30 Wash. 549, 94 Am. St. 889, 71 Pac. 37, 60 L. R. A. 947.)   An act declaring such sales presumptively fraudulent was assumed to be valid by the courts of last resort in Wisconsin and Maryland.   (*Fisher v. Herrmann*, 118 Wis. 424, 95 N. W. 392; *Hart v. Roney*, 93 Md. 432, 49 Atl. 661; *Wright v. Hart*, 182 N. Y. 330, 75 N. E. 404, 3 Ann. Cas. 263, 2 L. R. A., N. S., 338; *Jaques & Tinsley Co. v. Carstarphen Warehouse Co.*, 131 Ga. 1, 62 S. E. 82.)

"The Michigan sales in bulk act (Pub. Acts 1905, No. 223), avoiding, as against creditors, sales in bulk otherwise than in the regular course of business, unless an inventory is made at least five days before the sale, and the purchaser receives a list of the seller's creditors, and notifies them of the proposed sale personally, or by registered mail, at least five days before its consummation, and making a purchaser not conforming to the statute a receiver for the benefit of the seller's creditors, is a valid exercise of the police power, and does not deny due process or the equal protection of the laws." (*Kidd, Dater & Price Co. v. Musselman Grocer Co.*, 217 U. S. 461, 30 Sup. Ct. 606, 54 L. ed. 839; sustained in *Noble State Bank v. Haskell*, 219 U. S. 104, 31 Sup. Ct. 186, 55 L. ed. 112, Ann. Cas. 1912A, 487; *Thorpe v. Pennock Mercantile Co.*, 99 Minn. 22, 108 N. W. 940, 9 Ann. Cas. 229; *John P. Squire & Co. v. Tellier*, 185 Mass. 18, 102 Am. St. 322, 69 N. E. 312; *Lemieux v. Young*, 211 U. S. 489, 29 Sup. Ct. 174, 53 L. ed. 295; affirming *Young v. Lemieux*, 79 Conn. 434, 129 Am. St. 193, 65 Atl. 436, 600, 8 Ann. Cas. 452, 20 L. R. A., N. S., 160.)

A sale of the fixtures necessary for the conducting of the business made such sale fraudulent and void as to the creditors unless the notices provided in the statute had been given in the manner prescribed by law, for the reason that by the sale of such fixtures without the purchase of new fixtures to take the place of the old fixtures there was a substantial conveyance of the business or trade of the vendor to the prejudice of the rights of the vendor's creditors, among whom were plaintiffs herein.   (*Parham & Co. v. Potts-Thompson Liquor*

*Co.*, 127 Ga. 303, 56 S. E. 460; *Knapp, Stout & Co. v. Mc-Caffrey*, 178 Ill. 107, 69 Am. St. 290, 52 N. E. 898; *Fitz Henry v. Munter*, 33 Wash. 629, 74 Pac. 1003; *Holford v. Trewella*, 36 Wash. 654, 79 Pac. 308; *Plass v. Morgan*, 36 Wash. 160, 78 Pac. 784.)

Varian & Norris, for Respondent Thomas Buhl.

The bulk sales law is unconstitutional and violates the provisions of sec. 1, art. 1, and sec. 13 of art. 1 of the constitution. (*Off & Co. v. Morehead*, 235 Ill. 40, 126 Am. St. 184, 85 N. E. 264, 14 Ann. Cas. 434, 20 L. R. A., N. S., 167; *Pogue v. Rowe*, 236 Ill. 157, 86 N. E. 207; *Wright v. Hart*, 182 N. Y. 330, 75 N. E. 404, 3 Ann. Cas. 263, 2 L. R. A., N. S., 338; *Miller v. Crawford*, 70 Ohio St. 207, 71 N. E. 631, 1 Ann. Cas. 558; *McKinster v. Sager*, 163 Ind. 671, 106 Am. St. 268, 72 N. E. 854, 68 L. R. A. 273; *Block v. Schwartz*, 27 Utah, 387, 101 Am. St. 971, 76 Pac. 22, 1 Ann. Cas. 550, 65 L. R. A. 308.)

The language of the statute seems to be very plain, and it is evident from the terms thereof that the legislature never intended that fixtures should be embraced within its meaning. (*Gallus v. Elmer*, 193 Mass. 106, 78 N. E. 772, 8 Ann. Cas. 1067; *Lee v. Gillen & Boney*, 90 Neb. 730, 134 N. W. 278; *Albrecht v. Cudihee*, 37 Wash. 206, 79 Pac. 628; *Bowen v. Quigley*, 165 Mich. 337, 130 N. W. 690, 34 L. R. A., N. S., 218; *People's Savings Bank v. Van Allsburg*, 165 Mich. 524, 131 N. W. 101; *Everett Produce Co. v. Smith Bros.*, 40 Wash. 566, 111 Am. St. 979, 82 Pac. 905, 5 Ann. Cas. 798, 2 L. R. A., N. S., 331; *Curtis v. Phillips*, 5 Mich. 112; *Kolander v. Dunn*, 95 Minn. 422, 104 N. W. 371, 483.)

The bulk sales law being in derogation of the common law and of the right to alienate property without restriction is to be strictly construed. (*Yancey v. Lamar-Rankin Drug Co.*, 140 Ga. 359, 78 S. E. 1078; *Taylor v. Folds*, 2 Ga. App. 453, 58 S. E. 683.)

TRUITT, J.—This action was commenced by the appellant corporation, as assignee of two different mercantile companies, against said T. R. Ellis to collect certain accounts

against him for goods, wares and merchandise sold and delivered to him by said companies at his place of business in Cambridge, Idaho. The complaint alleges that these accounts were duly assigned by said companies to appellant, who was the owner and holder of them at the time of commencing this action, and that the aggregate sum of said accounts amounting to $285.46 was due and owing from Ellis to appellant, and judgment was demanded for said sum against him.

In said complaint the respondent, Thomas Buhl, is connected with the transaction which is the basis of the action against him as follows: "That on or about December 11, 1912, the said T. R. Ellis sold and transferred all his said stock of goods, wares and merchandise, including fixtures, out of the usual and ordinary course of business and trade, and did thereby substantially sell and convey the entire business and trade thereof conducted by the said T. R. Ellis, said fixtures consisting of counters, scales, shelving, tables, and store fixtures in general. That the said T. R. Ellis particularly sold the said fixtures to the defendant, Thomas Buhl, for the sum of $150." It will be seen from the complaint that Buhl did not buy or receive any of the merchandise.

The respondent Buhl, as defendant therein, interposed a general demurrer to said complaint, and after consideration of the same by the trial court it was sustained and the action dismissed. From the order dismissing said action and the judgment entered against appellant, this appeal is taken. The defendant Ellis did not appear in the court below, and the record is silent as to whether or not he was served with process.

The appellant in his brief presents an argument and cites authorities to show that the claims in this case were assignable and were properly assigned to the plaintiff, and it could therefore legally maintain an action upon them. As to the defendant Ellis, counsel for the respondent Buhl do not dispute the validity of the assignment of these claims, nor the right of appellant to maintain an action to collect the debt which they constitute, as to the defendant Ellis, but do question the manner of the proceeding in said action for the pur-

pose of holding defendant Buhl liable for this debt. But as this only relates to the manner of procedure and not to the real points presented by the appeal, we do not think proper to pass upon it.

The two important points presented by this appeal are, (1) whether the law under consideration imposes such restrictions on sales of goods, wares and merchandise in bulk by persons engaged in that business, as to deprive them of their property without due process of law, and also whether it is class legislation within the inhibition of the constitution on that subject; and, (2), that if the law is constitutional, whether fixtures used in connection with the mercantile business are by implication included within its purview and meaning.

This act, though passed by the legislature in 1903, has never before come before this court for interpretation, and for that reason we have examined a number of the decisions of other courts that have passed upon and construed similar laws with much interest.

It must be conceded that this law does restrict and put some burdens on the sale of the kind of property to which it relates, but it is claimed in its favor that its object is to prevent an abuse of credit extended to debtors engaged in the mercantile business and thus prevent fraudulent sales that would otherwise deprive their creditors of their honest debts.

In *John P. Squire & Co. v. Tellier,* 185 Mass. 18, 102 Am. St. 322, 69 N. E. 312, a case decided by the supreme court of Massachusetts, it is said:

"The statute deals only with sales in bulk of a part or the whole of a stock of merchandise, which are not made in the ordinary course of trade and in the regular and usual prosecution of the seller's business. It does not interfere with the transaction of ordinary business, but relates to unusual and extraordinary transfers. In substance it declares that a sale of this kind shall not be made without first giving to creditors an opportunity to collect their debts, so far as the property to be sold might enable them to collect, or without subsequently making satisfactory provision for the payment of

these debts.  A sale made in violation of the statute is void as against creditors, and, if the vendor's debts are paid, the sale cannot be interfered with.  A purchaser, to be safe, has only to see that the vendor's creditors are provided for.  The vendor may sell freely, without regard to the statute, if he pays his debts.''

The purpose of this law is quite similar to that of sec. 3169, Rev. Codes, against transfers of property with intent to defraud or delay creditors; and under the statute relating to sales in bulk, the object is to prevent a retail merchant from disposing of his stock of goods without notice to his creditors with the intention of doing the same thing, and it is the intention and purpose of this law to prevent that.  It is true that in doing this, it may work a hardship on honest tradesmen, but many other laws do the same thing as to honest men that the designs of the dishonest may be defeated.

Some of the early acts passed upon this subject were held unconstitutional and void by the supreme courts of the respective states in which they were passed, but the objections pointed out by the courts in those acts have been corrected in the later laws enacted on this subject and have now been held constitutional by the courts of the same states that had declared the earlier acts unconstitutional.

*Block v. Schwartz*, 27 Utah, 387, 101 Am. St. 971, 76 Pac. 22, 1 Ann. Cas. 550, 65 L. R. A. 308, is relied on by respondent to support his contention that the law in question in the case at bar is unconstitutional and void.  In that case the statute on this subject in the state of Utah was held unconstitutional, but that statute had two objectionable provisions in it which are pointed out by Mr. Justice Bartch in his opinion as follows: ''Under the provisions of this act a sale of any portion or all of a stock of merchandise, made out of the ordinary course of trade, by any merchant who has creditors, without a detailed inventory made at least five days before the sale, showing the cost price of each article, and notice of the proposed sale, the cost price, and selling price, given at least five days before the sale to each creditor, is not only fraudulent and void, but also renders both the seller and purchaser guilty

of a misdemeanor, and subjects them to the penalty provided in the act for that crime." And in the opinion a further objection is stated as follows: "Now, it will be noticed that nowhere in its provisions is there any exemption of any sale by administrators, executors, trustees, assignees for the benefit of creditors, trustees in bankruptcy, or public officers acting under judicial process. There being no such exemption, it would seem that such sales of merchandise owned by debtors, made by persons acting in a fiduciary capacity under judicial process, must also be made in accordance with the provisions of the act, in order that the seller and purchaser may avoid the penalties provided. It is evident that such a law would not only deprive property of one of its chief attributes, but would greatly hamper the administration of estates and retard the enforcing of judicial process." It is not probable that a law with such drastic and unreasonable provisions as the Utah statute had would ever be sustained by any court.

It is generally conceded that state legislatures have the right to enact reasonable laws to prevent fraudulent sales of property and to protect creditors, and that this right falls within the general scope of police power will not be denied. But the police power must stop where it comes against the provisions of the constitution. It must be exercised for a reasonable and beneficial purpose to the general public or to a special class of business.

In the syllabus of *Hirth-Krause Co. v. Cohen,* 177 Ind. 1, 97 N. E. 1, Ann. Cas. 1914C, 708, which is a case decided in 1912, by the supreme court of Indiana, it is stated: "Acts 1909, c. 49, sec. 1, making a sale of goods or merchandise in bulk void, unless in the ordinary course of trade, and unless an inventory be made before the sale showing the quantity of the goods, and the cost of each article, and unless the purchaser demand and receive from the seller a written list of names and addresses of the seller's creditors, with the amount of indebtedness, and unless the purchaser before taking possession shall notify personally the creditors named in the list, or known to him, of the proposed sale, and the price and con-

ditions thereof, is a proper exercise of the state's police power."

In *Spurr v. Travis*, 145 Mich. 721, 116 Am. St. 330, 108 N. W. 1090, 9 Ann. Cas. 250, which is a leading case, the supreme court of Michigan held that the "sales in bulk" statute of that state did not violate the constitution, and in discussing that point the opinion says: "Does the act conflict with section 32 of article 6 of the constitution? It may be conceded that an act which should prohibit the sale of property of any character, either generally or for a stated time, without any adequate purpose or object, would constitute such an interference with the property and liberty of the individual as is inhibited by this section. The courts have, however, never treated this or similar provisions as prohibitive of legislation in the exercise of the police power which regulates the manner of the use or disposition of property, even though a temporary inconvenience may be suffered by the owner." And in the case of *Musselman Grocer Co. v. Kidd etc. Co.*, 151 Mich. 478, 115 N. W. 409, the same court held that the act was not in conflict with any of the provisions of the Michigan constitution, or of section 1 of the fourteenth amendment of the constitution of the United States. The plaintiff in error, being dissatisfied with the decision, carried the case to the supreme court of the United States, which, in 1910, held that the Michigan law was based on a proper and reasonable classification of business and did not violate the fourteenth amendment to the federal constitution. (*Kidd, Dater & Price Co. v. Musselman Grocer Co.*, 217 U. S. 461, 30 Sup. Ct. 606, 54 L. ed. 839.) In this holding, the court followed its previous ruling, made in the case of *Lemieux v. Young*, 211 U. S. 489, 29 Sup. Ct. 174, 53 L. ed. 295, which involved the same question with reference to a similar statute of Connecticut. In delivering the opinion in *Lemieux v. Young*, *supra*, Mr. Justice White said: "The supreme court of errors, in upholding the validity of the statute, decided that the subject with which it dealt was within the police power of the state, as the statute alone sought to regulate the manner of disposing of a stock in trade outside of the regular course

of business, by methods which, if uncontrolled, were often resorted to for the consummation of fraud, to the injury of innocent creditors. In considering whether the requirements of the statute were so onerous and restrictive as to be repugnant to the fourteenth amendment, the court said: 'It does not seem to us, either from a consideration of the requirements themselves of the act, or of the facts of the case before us, that the restrictions placed by the legislature upon sales of the kind in question are such as will cause such serious inconvenience to those affected by them as will amount to any unconstitutional deprivation of property. A retail dealer who owes no debts may lawfully sell his entire stock without giving the required notice. One who is indebted may make a valid sale without such notice, by paying his debts, even after the sale is made. Insolvent and fraudulent vendors are those who will be chiefly affected by the act, and it is for the protection of creditors against sales by them of their entire stock at a single transaction, and not in the regular course of business, that its provisions are aimed.' '' And Mr. Justice White further said: ''That the court below was right in holding that the subject with which the statute dealt was within the lawful scope of the police authority of the state, we think is too clear to require discussion.''

We think the foregoing authorities are decisive as to the first point submitted by appellant, but will say that as the state of Washington has a law substantially like ours on this subject, and as the same question was presented to the supreme court of that state as is here presented in the case at bar, we refer to the case of *McDaniels v. J. J. Connelly Shoe Co.*, 30 Wash. 549, 94 Am. St. 889, 71 Pac. 37, 60 L. R. A. 947, as being directly in point in this case. In meeting the objections there urged to the Washington law, the court said:

''The first objection to the constitutionality of the act is that it deprives persons of their property without due process of law. As we understand the argument, the contention is not that the act deprives an owner of property of his day in court, where his property rights are judicially called in question, or that it in any manner authorizes the actual physical

taking by one of the property of another, but it is that as the term 'property,' in legal signification, includes in its meaning the right of any person to possess, use, enjoy or dispose of a thing, the act violates the constitution, inasmuch as it restricts the right of an owner to dispose of his property. The act, it is true, does prohibit owners of certain kinds of property from disposing of it in a particular way, without complying with certain conditions, but it is not for that reason necessarily unconstitutional. While the legislature may not constitutionally declare that void which in its nature is, and under all circumstances must be, entirely honest and harmless, yet it may, under its police powers, place such reasonable restrictions on the right of an owner in relation to his property as it finds necessary to protect the interests of the public, or prevent frauds among individuals. If this were not so, it would be easy to find many unconstitutional acts on the statute books. . . . .

"It is next said that the act violates that provision of the constitution which prohibits the legislature from granting to a class of citizens privileges and immunities which upon the same terms shall not equally belong to all citizens; in other words, it is class legislation. In *Redford v. Spokane Street Ry. Co.*, 15 Wash. 419, 46 Pac. 650, we held that where a law is uniform so far as it operates, its constitutionality is not affected by the number of persons within the scope of its operation; and, applying this principle, we held in *Fitch v. Applegate*, 24 Wash. 25, 64 Pac. 147, that a law giving laborers in certain enumerated industries liens upon the general property of their employers was constitutional. The same principle is applicable to the case in hand."

In deciding the question as to the constitutionality of the law of this state regulating the purchase, sale and transfer of stocks of goods, wares and merchandise in bulk and prescribing penalties for the violation thereof, we hold both by weight of authority and on principle that said law is constitutional and valid, that it is not repugnant to the constitution as class legislation, and that it is a proper exercise of the police power of the state.

Coming, now, to the other point presented by the appellant to reverse the judgment of the lower court, viz.: That the fixtures of a merchant are in effect a part of his goods, wares and merchandise or stock in trade, and that said statute relating to sales in bulk of such merchandise should be construed to include the word "fixtures" by implication. This statute is clearly in derogation of the common-law rule, in that it prescribes conditions and restrictions regarding the sale of such property, for under the common law a person could sell any of his property at such time and in such manner as he might choose, without notice of the sale to his creditors or any other person, and without doing the things prescribed by said statute. Statutes of this kind should not be extended by implication to supply words that would bring subjects into the purview of the statute not specifically found there and not within its spirit or intention. Can the word "fixtures" be supplied to this statute? Is it germane to the scope, meaning and purpose of the statute? We think not.

The Standard Dictionary defines "fixture" as, "An article of a personal or chattel nature affixed to the freehold by a tenant, and removable by him, if it can be taken away without material injury to the realty, as gas fixtures in a residence, counters, shelving, and store fixtures in a mercantile house, or machinery or apparatus in trade and manufactures." And Bouvier's Law Dictionary defines "fixture" as, "Anything affixed or attached to a building, and used in connection with it, movable or immovable. Whenever the appendage is of such nature that it is not part or parcel of the building but may be removed without injury to the building, then it is a movable fixture and does not pass without conveyance to the freehold." Now, we think that under these definitions it would do violence to the clear meaning and intent of this statute to read the word "fixtures" into it. Merchandise is defined by Webster as, "Objects of commerce; whatever is usually bought and sold in trade or market by merchants." We think that merchandise as used in this statute must be construed to mean such things as are usually bought and sold by merchants. Merchandise means some-

thing that is sold every day and is constantly going out of the store and being replaced by other goods, but the fixtures are not a part of the trade or business; they are not sold in the ordinary trade as goods. They remain from year to year. The merchant could not dispose of them as long as he remains in business. It is true that shelving, counters, drawers, tables and many other things are necessary in order to conduct the business of the retail merchant, and so are delivery wagons in the larger towns to deliver goods, and clerks to sell the goods, and so is a house or room in which to keep them, but the clerks are not part of the goods, wares or merchandise, and though the business cannot be conducted without a house or place to keep and display the goods, the house or the room where they are sold is not a part of the goods, wares and merchandise.

In *Kolander v. Dunn*, 95 Minn. 422, 104 N. W. 371, 483, it was held that, "Under chap. 291, p. 357, Laws 1899, the sale of the stock of merchandise was presumed to be fraudulent and void, but that act has no application to the sale of fixtures." In *Gallus v. Elmer*, 193 Mass. 106, 78 N. E. 772, 8 Ann. Cas. 1067, it is held that, "As used in the Massachusetts statute prohibiting sales in bulk except when made in the ordinary course of trade, the phrase 'stock of merchandise' is applicable only to the articles which the seller keeps for sale in the ordinary course of his business, and is not applicable to a storekeeper's fixtures."

In *Lee v. Gillen & Boney*, 90 Neb. 730, 134 N. W. 278, it was held that, "Section 6048, Ann. St. 1909, commonly called the 'Bulk Sales Law,' relates only to merchandise kept for sale 'in the ordinary course of trade and in the regular and usual prosecution of' business, and does not apply to fixtures or a manufacturer's stock of raw materials used by himself, and not kept or offered for sale in the ordinary course of trade."

It is suggested that to make the law apply to fixtures as well as to the goods would strengthen the retail merchant's credit. Perhaps it would, and it might also strengthen his credit to make it include all his other personal property, or

his store building, if he owned it, or his farm, but that is beyond the scope and reasonable purpose of the law, which is not primarily to strengthen the retailer's credit but to make him pay his honest debts.

A very peculiar feature of this case is that the complaint does not charge that the goods, wares or merchandise were sold to respondent Buhl, but in effect claims that he should pay for them because he bought the fixtures, and this theory of the case would make the goods, wares and merchandise a *part* of the *fixtures* instead of the *fixtures* being a *part* of the goods. We hardly think this is permissible.

Having thus decided that the points relied on by appellant to reverse the judgment against it are not well taken, we hold, therefore, with the lower court that said complaint does not state a cause of action against respondent Buhl. The judgment must be affirmed, with costs in favor of respondent.

Sullivan, C. J., concurs.