THE PEOPLE OF THE STATE OF NEW YORK ex rel. EDWARD T. O'LOUGHLIN, as Register of the County of Kings, Respondent, *v.* WILLIAM A. PRENDERGAST, as Comptroller of the City of New York, et al., Appellants.

Kings county — mandamus — when register of Kings county may have mandamus to compel board of estimate and apportionment to appropriate money for salaries of clerks appointed by register under the statute (L. 1913, ch. 776).

Where a statute (L. 1913, ch. 776) empowered the register of the county of Kings to appoint and at pleasure remove one chief searcher and examiner and several clerks at salaries not to exceed a

378 People ex rel. O'Loughlin *v.* Prendergast.

[219 N. Y.] Points of counsel. . [Dec.,

certain maximum amount for each position, it is the duty of the board of estimate and apportionment to make the necessary appropriation for the salaries for such positions when requested so to do by the said register. The board has no discretion and cannot refuse to make such appropriation because, in its judgment, the positions are unnecessary and the amount required excessive and wasteful, and upon its refusal a peremptory writ of mandamus will issue directing an appropriation for the payment of such salaries now due and to become due. (*People ex rel. Plancon* v. *Prendergast*, 219 N. Y. 252, distinguished.)

*People ex rel. O'Loughlin* v. *Prendergast*, 174 App. Div. 897, affirmed.

(Argued November 23, 1916; decided December 12, 1916.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered December 30, 1915, which affirmed an order of Special Term granting a motion for a peremptory writ of mandamus.

The facts, so far as material, are stated in the opinion.

*Lamar Hardy, Corporation Counsel* (*George A. Green* and *Thomas F. Magner*), for appellants. The order, so far as it relates to Charles H. Wilson, must be reversed because he is not a party to this proceeding, he has an adequate remedy at law, he has shown no clear legal right to a writ, and there was no appropriation. (*Schieffelin* v. *Komfort*, 212 N. Y. 520; *People ex rel. Schneider* v. *Prendergast*, 172 App. Div. 215; *People* v. *Green*, 1 Hun, 1, 12; *People ex rel. Bank* v. *Board of Apportionment*, 3 Hun, 11; 64 N. Y. 627; *Lethbridge* v. *Mayor, etc., of New York*, 133 N. Y. 233; *People ex rel. Daly* v. *York*, 66 App. Div. 453; *Colihan* v. *Miller*, 72 Misc. Rep. 140; *People ex rel. O'Loughlin* v. *Bd. of Estimate*, 87 Misc. Rep. 601.) The order appealed from, so far as it compels the board of estimate to provide funds for the payment of salaries for certain purposes, from June 1 to December 31, 1915, should be reversed, for the reason

that there had been no incumbents of the several offices during that period and no work had been done. (L. 1901, ch. 466, §§ 226, 900, 902; *People ex rel. McClinchie* v. *Prendergast,* 140 App. Div. 235.) When the legislature enacts a law that the register of Kings county may appoint and at pleasure remove certain employees, it is not incumbent upon the board of estimate and the city of New York to appropriate moneys for these employees . when the undisputed fact is that the employees are totally unnecessary. (*People ex rel. O'Loughlin* v. *Bd. of Estimate,* 167 App. Div. 76; 216 N. Y. 625; *People ex rel. Deitz* v. *Hogan,* 214 N. Y. 216; *Matter of Deitz,* 86 Misc. Rep. 610; *People ex rel. Rodgers* v. *Coler,* 166 N. Y. 1.)

*Jesse Fuller, Jr.,* for respondent. The county of Kings is separate and distinct from the corporation of the city of New York, and it is the duty of the board of estimate and apportionment of the city of New York to make adequate provision for the payment of those expenses incurred or to be incurred in the office of register which are proper county charges of Kings county. (*McGrath* v. *Grout,* 171 N. Y. 7; *Matter of Brenner,* 170 N. Y. 185; *Rathbone* v. *Wirth,* 150 N. Y. 459; *People ex rel. Bank* v. *Supervisors,* 51 N. Y. 401; *Mayor, etc.,* v. *Furze,* 3 Hill, 612; *People ex rel. Gardenier* v. *Supervisors,* 134 N. Y. 5.) The allegations of the petition show that the board of estimate is unlawfully impeding the register in the administration of his office and violating its statutory duty by persistently refusing to provide for the positions named in chapter 776 of the Laws of 1913. (*People ex rel. O'Loughlin* v. *Bd. of Estimate,* 152 N. Y. Supp. 625.)

CARDOZO, J. By chapter 776 of the Laws of 1913, the register of the county of Kings was empowered to appoint and at pleasure remove one chief searcher and examiner at a salary not to exceed $3,000, and two assistant

examiners at $2,000 each; also one notarial clerk at a salary not to exceed $2,000, and two assistant notarial clerks · at a salary not to exceed $1,500 each. In June, 1913, the relator, the register of Kings county, requested the board of estimate and apportionment to appropriate $6,000 for salaries for these positions from July to December, 1913. The comptroller reported to the board that in his opinion the positions were unnecessary, and the appropriation was refused. In September, 1913, the relator made a like request for the year 1914, and it was again refused. In October, 1914, he made a like request for the year 1915, and again it was refused. In the meantime, on September 15, 1914, he appointed one Charles H. Wilson chief searcher and examiner. Wilson served till January 29, 1915, when he resigned because there was no money to pay him.. The writ of mandamus granted .below requires an appropriation for salaries for the year 1915, and an appropriation for Wilson's salary during the four and one-half months of his service in 1914.

We think the mandamus was properly granted.

(1) The appellants insist that the positions were unnecessary and that the appropriation involves a waste of moneys. The positions were, however, expressly authorized by statute. The power. to determine whether they should be filled was lodged with the register and not with the board of estimate. . There is no charge that the register has been guilty of fraud or corruption. There is merely a statement that he has made a mistake and that the office could be run with the existing force. Even in a taxpayer's action such averments would be inadequate (*Talcott* v. *City of Buffalo*, 125 N. Y. 280; *Ziegler* v. *Chapin*, 126 N. Y. 342). Courts are not to substitute their judgment for the judgment of the register. For like reasons they are not to substitute the judgment of the board of estimate. The duty of the board is to appropriate the money necessary to provide for salaries fixed by law. It has no general power of visitation. If abuses

develop, they must be corrected through other agencies. We did not hold to the contrary in *People ex rel. Plancon* v. *Prendergast* (219 N. Y. 252). Nothing in the law made it mandatory on the board of estimate to appropriate the salary which was in controversy there (L. 1884, ch. 295). The number of subordinates was not prescribed. Their compensation was not prescribed. The rule applicable to such a situation has no pertinency here. Here the positions are established by law; the salaries are fixed by law; the register has made the appointments; and upon the record before us the duty of the board is absolute.

(2) The point is made that the amount of the required appropriation is excessive. We are told that the board of estimate may not be compelled to appropriate salaries at the maximum rate, but may fix a lower rate. We do not share that view. The statute says that the register may appoint and at pleasure remove an examiner, a notarial clerk and two assistant notarial clerks at salaries not to exceed prescribed amounts. The plain implication is that the register who is to appoint them is also to fix their pay. It is true that under section 56 of the charter (Greater New York Charter, L. 1901, ch. 466, § 56, as amended by L. 1902, ch. 435) the board of aldermen on the recommendation of the board of estimate and apportionment is to fix the salaries of all persons (with enumerated exceptions) whose compensation is paid out of the city treasury. That provision does not apply, however, where the power to prescribe salaries is otherwise prescribed by law. The special statute then becomes an exception to the general one (*Wormser* v. *Brown*, 149 N. Y. 163, 170). We find such a special statute in the act of 1913 (L. 1913, ch. 776). The board of estimate and apportionment has, therefore, no discretion. Its duty is to appropriate the necessary moneys (Greater New York Charter, § 230, subd. 6.)

(3) The point is made that the appropriation should be

restricted to the amount of future salaries, and ought not to include the salary payable to Wilson for services already rendered.   It is said that Wilson's appointment was illegal because the charter forbids an officer from incurring any expense unless an appropriation covering it shall previously have been made (Greater New York Charter, §§ 1541, 1542).   But a distinction must be noted between appropriations which are mandatory and those which are discretionary.   This appropriation, as we have seen, is of the former class.   Whether Wilson could maintain an action for salary in advance of an appropriation, even though it be mandatory, we do not now decide (*Davidson* v. *Village of White Plains*, 197 N. Y. 266).   That is not the case before us.   The appointee is not suing for salary; the officer who appointed him is asking for an appropriation which will make provision for the salary.   The board of estimate was requested in 1913 and again in 1914 to make this appropriation.   It refused to do so.   Its refusal was unlawful, and it has remained charged with the continuing duty of complying with the demand.   The mandamus compels the performance of a duty which ought to have been fulfilled before.   Its effect is to make the appropriation, and thereby supply the fund from which payment may be obtained.   The appropriation, being made, relates back to the time when it ought to have been made.

The order should be affirmed with costs.

WILLARD BARTLETT, Ch. J., CHASE, COLLIN, CUDDEBACK, HOGAN and POUND, JJ., concur.

Order affirmed.

statutes has been upheld in two cases by the United States Supreme Court (*Lemieux* v. *Young*, 211 U. S. 489; *Kidd, Dater & Price Co.* v. *Musselman Grocery Co.*, 217 U. S. 461). Objection to this statute on the ground of conflict with the federal constitution has thus been removed. We have still to determine, however, whether there is any conflict with our state constitution; and that requires us to say whether we shall adhere to our decision in *Wright* v. *Hart*.

We think it is our duty to hold that the decision in *Wright* v. *Hart* is wrong. The unanimous or all but unanimous voice of the judges of the land, in federal and state courts alike, has upheld the constitutionality of these laws. At the time of our decision in *Wright* v. *Hart*, such laws were new and strange. They were thought in the prevailing opinion to represent the fitful prejudices of the hour (*Wright* v. *Hart, supra,* at p. 342). The fact is that they have come to stay, and like laws may be found on the statute books of every state. The United States Supreme Court has sustained them (*Lemieux* v. *Young, supra; Kidd, Dater & Price Co.* v. *Musselman Grocery Co., supra*). The courts of Washington (*McDaniels* v. *J. J. Connelly Shoe Co.,* [1902] 30 Wash. 549); Tennessee (*Neas* v. *Borches,* [1902] 109 Tenn. 398); Connecticut (*Walp* v. *Mooar,* [1904] 76 Conn. 515; *Lemieux* v. *Young,* [1905] 79 Conn. 434); Massachusetts (*Squire & Co.* v. *Tellier,* [1905] 185 Mass. 18); Oklahoma (*Williams* v. *Fourth Nat. Bank,* [1905] 15 Okla. 477); Minnesota (*Thorpe* v. *Pennock Merc. Co.,* [1906] 99 Minn. 22); Michigan (*Spurr* v. *Travis,* [1906] 145 Mich. 721; *Musselman Grocer Co.* v. *Kidd, Dater & Price Co.,* [1908] 151 Mich. 478); Pennsylvania (*Wilson* v. *Edwards,* [1907] 32 Penn. Super. Ct. 295; *Feingold* v. *Steinberg,* [1907] 33 id. 39); Georgia (*Jaques & Tinsley Co.* v. *Carstarphen Warehouse Co.,* [1908] 131 Ga. 1); Mississippi (*Moore Dry Goods Co.* v. *Rowe,* [1910] 97 Miss. 775; [1912] 99 id. 30); Maine (*McGray* v. *Woodbury,*

[1912] 110 Me. 163); Texas (*Nash Hardware Co.* v. *Morris,* [1912] 105 Tex. 217); Nebraska (*Appel Merc. Co.* v. *Barker,* [1912] 92 Neb. 669); New Jersey (*Kett* v. *Masker,* [1914] 86 N. J. L. 97); Idaho (*Boise Ass'n* v. *Ellis,* [1914] 26 Idaho, 438); Montana (*Wheeler & M. Merc. Co.* v. *Moon,* [1914] 49 Mont. 307), and Oregon (*Coach* v. *Gage,* [1914] 70 Ore. 182) have sustained them. Indiana, Ohio and Illinois, which once held such laws bad (*McKinster* v. *Sager,* [1904] 163 Ind. 671; *Miller* v. *Crawford,* [1904] 70 Ohio St. 207; *Williams & Thomas Co.* v. *Preslo,* [1911] 84 Ohio St. 328; *Off & Co.* v. *Morehead,* [1908] 235 Ill. 40), have sustained their present laws, which do not differ substantially from our own (*Hirth-Krause Co.* v. *Cohen,* [1911] 177 Ind. 1; *Johnson Co.* v. *Beloosky,* [1914] 263 Ill. 363; *Steele, Hopkins & Meredith Co.* v. *Miller,* [1915] 92 Ohio St. 115). The one jurisdiction in which such statutes remain invalid is Utah (*Block & Griff* v. *Schwartz,* [1904] 27 Utah, 387), and there the adverse judgment was rendered many years ago.

In such circumstances we can no longer say, whatever past views may have been, that the prohibitions of this statute are arbitrary and purposeless restrictions upon liberty of contract (*Rast* v. *Van Deman & Lewis Co.* 240 U. S. 342, 366; *Noble State Bank* v. *Haskell,* 219 U. S. 104; *Otis* v. *Parker,* 187 U. S. 606). The needs of successive generations may make restrictions imperative to-day which were vain and capricious to the vision of times past (*People* v. *Schweinler Press,* 214 N. Y. 395). Back of this legislation, which to a majority of the judges who decided *Wright* v. *Hart* seemed arbitrary and purposeless, there must have been a real need. We can see this now, even though it may have been obscure before. Our past decision ought not to stand in opposition to the uniform convictions of the entire judiciary of the land. Least of all should it stand when rendered by a closely divided court against the earnest protest of distinguished judges. Indeed, in a later case (*People* v. *Luhrs,* 195

N. Y. 377), we stated with the concurrence of all the members of the court, that the authority of *Wright* v. *Hart* had been shaken, though the case did not call upon us to determine whether it was still the law. We cannot say to-day in the face of such overwhelming authority, that the presumption of validity which attaches to every act of legislation has been overcome. The present statute is similar in essentials to the one condemned in 1905. In details it may be distinguished from the earlier one, but the details are in reality trifling. We cannot without a sacrifice of candor rest our judgment upon them. We think we ought not to do so. We should adopt the argument and the conclusion of the dissenting judges in *Wright* v. *Hart*, and affirm the validity of the statute on which the plaintiff builds his rights.

The order should be reversed, without costs, and the questions certified answered in the affirmative.

WILLARD BARTLETT, Ch. J., CHASE, COLLIN, CUDDE-BACK, HOGAN and POUND, JJ., concur.

Order reversed, etc.