FERRAT, RESPONDENT, v. ADAMSON ET AL., APPELLANTS.

(No. 3,719.)

(Submitted November 29, 1916. Decided January 22, 1917.)

[163 Pac. 112.]

*Conversion—Constables—Measure of Damages—Instructions—*
*Sureties—Complaint—Bill of Exceptions—Bulk Sales Law.*

Appeal and Error—Bill of Exceptions.
1. Under section 7112, Revised Codes, any bill of exceptions settled during trial pursuant to section 6787, Revised Codes, or after trial (sec. 6788), whether used on motion for a new trial or not, may be used on appeal from a final judgment.

Principal and Surety—Official Bonds—Complaint.
2. The complaint against a surety company to recover on the official bond of a constable, in failing to state that the relationship of principal and surety existed between him and the company at the time of his alleged wrongful seizure and detention of plaintiff's chattels, did not state a cause of action, the allegation that such relationship existed at the time of filing the complaint being insufficient.

Trial—Evidence—Exceptions—Scope.
3. Where an exception to the introduction of evidence has once been saved, it is saved for all purposes unless thereafter waived.

Bulk Sales Law—When not Applicable.
4. *Held,* that pool-tables, cues and billiard-balls kept for use in a poolroom are not articles of merchandise which the Bulk Sales Law (Rev. Codes, secs. 6131–6135) was designed to cover, that Act having reference to such goods only as the merchant keeps for sale in the ordinary course of his business.

Conversion—What Constitutes.
5. The wrongful seizure and sale of personal property by a constable constitutes a conversion.

[As to what conversion of personal property is sufficient to maintain action of trover, see note in 24 Am. St. Rep. 795.]

Same—Measure of Damages—Erroneous Instruction.
6. In an action in conversion, the giving of an instruction submitting to the jury the measure of damages declared by section 6068, Revised Codes, is error, the rule thus established being inapplicable to such a case.

Same—Measure of Damages—Proper Instructions.
7. In an action in conversion, the measure of damages established by section 6071, Revised Codes, is controlling, unless special damages are pleaded and proved, in which event correct practice requires an instruction so supplementing the measure pointed out by said section as to allow such additional damages as may be warranted by the circumstances of the particular case.

Same—Trespass.
8. Every conversion of personal property implies a trespass.

On constitutionality of bulk sale legislation, see notes in 2 L. R. A. (n. s.) 331; 20 L. R. A. (n. s.) 160; L. R. A. 1915E, 917.

Same—Punitive Damages—Argumentative Instructions.
>    9.   Where the court had adequately covered the subject of punitive damages, it was improper to give an argumentative instruction that, if defendant constable levied upon the property "in a high-handed way to oppress plaintiff" with malicious purpose, the jury could in its discretion award punitive damages.

Evidence—Hearsay.
>    10.   Evidence of a conversation between defendant constable and the attorney for a person not a party to the action being tried was hearsay.

*Appeal from District Court, Lewis and Clark County; J. M. Clements, Judge.*

ACTION by W. D. Ferrat against James M. Adamson, as Constable of Helena Township, Lewis and Clark County, State of Montana, and another. Judgment for plaintiff and defendants appeal. Reversed and remanded.

*Mr. C. A. Spaulding, Messrs. Galen & Mettler·* and *Mr. Edward G. Toomey,* for Appellants, submitted a brief; *Mr. Spaulding* and *Mr. Albert J. Galen,* argued the cause orally.

The language of section 6131, Revised Codes, is sufficiently comprehensive to embrace property such as that involved here. The term "goods" is of very extensive meaning, and is generally understood and held to mean personal estate as contradistinguished from realty. It includes every conceivable kind of personal property, as well as fixtures and machinery; indeed, every species of property which is not real estate or freehold. (20 Cyc. 1262 *et seq.*) The term "goods" used in a statute providing that no assignment of goods by way of mortgage shall be valid unless accompanied by certain prescribed conditions with reference to execution and recordation includes fixtures and machinery used in a paper-mill. (*St. Joseph Hydraulic Co.* v. *Wilson,* 133 Ind. 465, 33 N. E. 113.) And the term "goods, wares or merchandise" is sufficiently comprehensive to include gold coin. (*Gay's Gold,* 80 U. S. (13 ·Wall.) 358, 20 L. Ed. 606.) In the case of *Knapp, Stout & Co.* v. *McCaffrey,* 178 Ill. 107, 69 Am. St. Rep. 290, 52 N. E. 898, the supreme court of Illinois held the term "goods" to include a raft of lumber being towed down the Mississippi River. But we are not without direct

authority as to the meaning of these terms when used in a statute practically identical with ours. In the case of *Plass* v. *Morgan,* 36 Wash. 160, 78 Pac. 784, the question was directly presented to the supreme court of that state as to whether property used by one engaged in the business of conducting a boarding-house and restaurant came within the purview of the Bulk Sales Law of that state. It was there held that it did. (See, also, *Parham & Co.* v. *Potts-Thompson Liquor Co.,* 127 Ga. 303, 56 S. E. 460; *Cooney, Eckstein & Co.* v. *Sweat,* 133 Ga. 511, 25 L. R. A. (n. s.) 758, 66 S. E. 257; *Virginia-Carolina Chemical Co.* v. *Bouchelle,* 12 Ga. App. 661, 78 S. E. 51.)

The measure of damages for the conversion of personal property is declared in section 6071, Revised Codes. (*Doll* v. *Hennessy Mercantile Co.,* 33 Mont. 80, 81 Pac. 625; *De Palma* v. *Weinman,* 15 N. M. 68, 24 L. R. A. (n. s.) 423, 103 Pac. 782.)

*Messrs. Carleton & Carleton,* for Respondent, submitted a brief; *Mr. Frank E. Carleton* argued the cause orally.

The Bulk Sales Law is not applicable to a transfer of property such as that involved in this suit. (*Albrecht* v. *Cudihee,* 37 Wash. 206, 79 Pac. 628.) In *Everett Produce Co.* v. *Smith Bros.,* 40 Wash. 566, 111 Am. St. Rep. 979, 5 Ann. Cas. 798, 2 L. R. A. (n. s.) 331, 82 Pac. 905, the court held that the horses, wagons and harness of a livery-stable keeper were not within the provisions of the statute, and followed the decision in the *Albrecht Case, supra.* The distinction between the foregoing case and the case of *Plass* v. *Morgan,* 36 Wash. 160, 78 Pac. 784, cited by counsel, is clearly pointed out in the *Everett Produce Company Case. Seattle Brewing & Malting Co.* v. *Donofrio,* 34 Wash. 18, 74 Pac. 823, is also distinguishable. (See, also, *Gallus* v. *Elmer,* 193 Mass. 106, 8 Ann. Cas. 1067, 78 N. E. 772; *Nolte* v. *Winstanley,* 16 Ariz. 327, 145 Pac. 246; *Boise Assn. of Credit Men etc.* v. *Ellis,* 26 Idaho, 438, L. R. A. 1915E, 917, 144 Pac. 6.) In the case of *Lee* v. *Gillen & Boney,* 90 Neb. 730, 134 N. W. 278, the supreme court of Nebraska in construing the bulk sales statute of that state, held that fixtures were not in-

cluded within the terms of the Act, and cited with approval *Gallus* v. *Elmer*, 193 Mass. 106, 8 Ann. Cas. 1067, 78 N. E. 772; (*Marshon* v. *Toohey*, 38 Nev. 248, 148 Pac. 357.) In *Van Patten* v. *Leonard*, 55 Iowa, 520, 8 N. W. 334, it was held that the terms in a lease, "any and all goods, wares and merchandise," did not include teams and wagons used by the lessee in delivering goods to his customers, nor notes and accounts due him and kept in the building. (*Kent* v. *Liverpool & London Ins. Co.*, 26 Ind. 294, 89 Am. Dec. 463.) Thus it may be seen that the courts, whenever called upon to construe the terms "goods, wares or merchandise" in Bulk Sales Acts, or in contracts of lease and insurance, *etc.*, have construed them to mean only such goods as are bought and sold again, and not permanent fixtures or accessories which remain in the store and are not offered for sale.

Upon the question of what are proper elements of damages in cases of this character, we cite *Kyd* v. *Cook*, 56 Neb. 71, 71 Am. St. Rep. 661, 76 N. W. 524; see, also, *City of Terre Haute* v. *Hudnut*, 112 Ind. 542, 13 N. E. 686; *Chandler* v. *Allison*, 10 Mich. 460; *Shafer* v. *Wilson*, 44 Md. 268; *Chapman* v. *Kirby*, 49 Ill. 211.

Complaint is made of instruction No. 8, relating to the awarding of exemplary damages. This instruction correctly stated the law, as is apparent from the following authorities: *Giddings* v. *Freedley*, 128 Fed. 355, 65 L. R. A. 327, 63 C. C. A. 85; *Cronfeldt* v. *Arrol*, 50 Minn. 327, 36 Am. St. Rep. 648, 52 N. W. 857. If an officer levies upon property, knowing it to be exempt, that fact may go in aggravation of damages. (*Lynd* v. *Picket*, 7 Minn. 184, 82 Am. Dec. 79; *Tracy* v. *Swartwout*, 10 Pet. (35 U. S.) 80, 9 L. Ed. 354; 13 Cyc. 105–110, 118.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In March, 1914, J. H. Madden owned a pool-hall business, in the conduct of which he employed certain pool-tables, cues and balls, and also kept for sale small quantities of tobacco, cigars,

*etc.* He sold the entire property in one transaction to W. D. Ferrat without attempting to comply with the Bulk Sales Law of this state. Leo Spring, a creditor of Madden, reduced his claim to judgment, secured an execution, and placed it in the hands of J. M. Adamson, a constable. Assuming to act under the execution, Adamson seized and sold the pool-tables, cues and balls as the property of Madden. Ferrat thereupon commenced this action to recover damages and joined as a defendant the American Surety Company. Issues were framed, and the cause tried, resulting in a judgment for plaintiff, from which the defendants appealed.

### ON MOTION TO STRIKE.

The verdict was returned on March 19, 1915. On the day following counsel for defendants secured an order granting them sixty days in addition to the statutory time within which to prepare and serve a proposed bill of exceptions. Ten days later the same counsel gave notice of intention to move for a new trial upon affidavits and bills of exceptions thereafter to be prepared and upon the minutes of the court. Within the time allowed for that purpose defendants presented and served a proposed bill of exceptions, and the same was settled and allowed. No further steps were taken in the new trial proceedings. Upon this appeal the record is made to consist of the notice of appeal, the judgment-roll and the bill of exceptions. Respondent has moved the court to strike the bill of exceptions from the record, upon the theory that it was prepared in aid of the new trial proceedings, and, since it was not used for that purpose, it has no place in the record.

Our Practice Act is complicated, but the complications ought not to be multiplied by construction which proceeds upon the [1] theory that it was intended to be as abstruse as it can be made. Under the Code of Civil Procedure of 1895 a bill of exceptions settled during the trial of a cause pursuant to section 1154 became a part of the judgment-roll (sec. 1196) and a part of the record on appeal from the final judgment (sec. 1736). A

bill of exceptions settled after trial pursuant to section 1155, or a statement of the case prepared under section 1173, did not become a part of the judgment-roll. If the statement of the case was *used* on motion for a new trial, it might be used on appeal from the final judgment (sec. 1736) ; otherwise it could not be so used. (*Harrington* v. *Butte & B. Min. Co.,* 35 Mont. 530, 90 Pac. 748.) It was doubtful whether a bill of exceptions settled after trial could be used on appeal from a final judgment in any event, and, apparently for the purpose of making definite that which was uncertain, section 1736 was amended in 1907 (Laws 1907, Chap. 42). The amended Act made the record on appeal from a final judgment to consist of the notice of appeal, the judgment-roll or such parts of it as might be necessary to be considered, and any bill of exceptions upon which the appellant relies. As if to leave no possible room for doubt as to what was intended, the amended Act provides further: "Any statement of the case settled after the decision of the motion for a new trial, when the motion is made upon the minutes of the court, as provided for in section 6796 (1173), or any bill of exceptions settled as provided for in section 6787 (1154) or in section 6788 (1155), or used on the motion of a new trial, may be used on appeal from a final judgment equally as upon appeal from the order granting or refusing a new trial." This language appears to be sufficiently explicit. Any bill of exceptions settled pursuant to section 1154 (6787, Rev. Codes) or section 1155 (6788, Rev. Codes), whether used on motion for a new trial or not, may be used on appeal from a final judgment.

It is contended, however, that the bill of exceptions in question was not settled under the provisions of either of those sections, but was prepared in aid of new trial proceedings under section 6796, Revised Codes. There is not anything in the record to justify this assumption. When the extension of time was secured for the purpose of preparing this bill of exceptions, the new trial proceedings had not been initiated, and there is nothing to indicate that they were then contemplated by the defeated parties. They were authorized to proceed under sec-

tion 6788, and apparently did so. The motion to strike is overruled.

## ON THE MERITS.

1. Does the complaint state a cause of action against the [2] American Surety Company? That company is sued only in its capacity as surety upon the official bond of the constable, and unless it is alleged that the relationship of principal and surety existed at the time of the seizure of the property (October 15, 1914) or the sale (November 7, 1914), or at some time between those dates when the property was held wrongfully, no cause of action is stated against the company. The allegation of the complaint which seeks to fasten liability upon the company is to the effect that on January 1, 1913, Adamson gave an official bond as constable, and that the American Surety Company "is surety upon said bond." This last phrase must be construed as referable to the time when the complaint was filed, November 20, 1914. It may have been the intention of the pleader to allege that the surety company became surety on such bond on January 1, 1913, but, whatever his intention, he failed to state the fact, and even if he had succeeded in carrying his intention into effect, it would still have been insufficient; for a surety on an official bond may withdraw therefrom at any time. (Sec. 401, Rev. Codes.) To charge that the company is now—November 20, 1914—surety on such bond does not imply that it sustained that relationship at any time previously, and certainly does not imply that it was surety at the time of the alleged wrongful acts of the constable. Further discussion is foreclosed by the decision of this court in *Sawyer* v. *Robertson,* 11 Mont. 416, 28 Pac. 456.

The specific defect in the complaint was pointed out by objection to the introduction of any evidence, and plaintiff was given every opportunity to amend. He did amend by adding to paragraph 3 of his complaint the words "upon said bond," but with the amendment the pleading charged nothing against the surety company which was not alleged before the amendment was made. [3] The objection to the introduction of evidence saved the

point. It was not necessary to repeat the objection every time evidence was sought to be introduced to bind the company. A point once saved is saved for all purposes, unless it is thereafter waived.

The complaint fails to state a cause of action against the surety company, and the objection to the introduction of evidence against it should have been sustained.

2. Did the pool-tables, cues and balls used in conducting the
[4] pool-hall business constitute a stock, or part of a stock, of goods, wares or merchandise the sale of which is regulated by the Bulk Sales Law (Revised Codes, secs. 6131–6135)?

The title of the Act is: "An Act regulating the sale of merchandise in bulk and making provision for the protection of the creditors of the vendor." (Laws 1907, p. 373.) Nearly every state in the Union has adopted a like statute designed to accomplish the same end. The scope of these Acts has been considered in many cases, and the decided weight of authority and the better reasoning justify the conclusion that it was the legislative purpose to regulate the sale in bulk of such articles only as the merchant keeps for sale in the ordinary course of his business. (*Gallus* v. *Elmer,* 193 Mass. 106, 8 Ann. Cas. 1067, 78 N. E. 772; *Kolander* v. *Dunn,* 95 Minn. 422, 104 N. W. 371, 483; *Lee* v. *Gillen & Boney,* 90 Neb. 730, 134 N. W. 278; *Johnson* v. *Kelly,* 32 N. D. 116, 155 N. W. 683; *Muskogee etc. Grocer Co.* v. *Durant* (Okl.), 153 Pac. 142; *Boise Assn. of Credit Men* v. *Ellis,* 26 Idaho, 438, L. R. A. 1915E, 917, 144 Pac. 6; *Nolte* v. *Winstanley,* 16 Ariz. 327, 145 Pac. 246; *Marshon* v. *Toohey,* 38 Nev. 248, 148 Pac. 357; *Albrecht* v. *Cudihee,* 37 Wash. 206, 79 Pac. 628; *contra, Parham & Co.* v. *Potts-Thompson Liquor Co.,* 127 Ga. 303, 56 S. E. 460; *Plass* v. *Morgan,* 36 Wash. 160, 78 Pac. 784.)

The pool-tables, cues and balls were kept for use, but not for sale, and the transaction between Madden and Ferrat did not fall within the purview of the Bulk Sales Law.

3. The measure of damages: In seizing and selling Ferrat's
[5] property to satisfy a claim against Madden, the constable

converted the property. (*Tuttle* v. *Hardenberg,* 15 Mont. 219, 38 Pac. 1070; *De Celles* v. *Casey,* 48 Mont. 568, 139 Pac. 586.) While the Code does not undertake to determine in advance the precise injury which may result from the wrongful conversion of personal property, it does establish a presumption that the damages will be measured adequately by the standard fixed by section 6071, Revised Codes. Under that section the elements to be considered are: "1. The value of the property at the time of its conversion, with the interest from that time; or, where the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict, without interest, at the option of the injured party; and, 2. A fair compensation for the time and money properly expended in pursuit of the property." The trial court refused to submit this measure of damages but directed the jury to find for the plaintiff, and in instruction No. 3 declared the measure of damages to be full compensation for all injuries proximately caused by the wrongful seizure and sale, including, as elements thereof, the value of the property, loss of profits, injury to credit and injury to the business by reason of its suspension consequent upon the wrongful acts of the constable as the same might appear, if at all, from the evidence.

By instruction No. 4 the jury was advised that, in determining the amount of damages to be awarded to the plaintiff, consideration should be given not only to the value of the property, but as well to the actual loss, if any, occasioned by the suspension of plaintiff's business, if the evidence disclosed that plaintiff was prevented from carrying on his business by reason of the wrongful acts of the constable.

Instruction 5 follows: "The court instructs the jury that the measure of damages in this case is the amount which will compensate the plaintiff for all the detriment or injury proximately caused by the levying upon his property and selling it, whether such damages could have been anticipated or not. That is to say, it will be your duty in this case in assessing the damages to be allowed the plaintiff to award him full and just compensa-

tion for all the injuries which the evidence satisfies your minds the plaintiff has sustained by reason of the levying upon and selling of his property described in the complaint herein."

Instructions 3 and 4 are incongruous, and instruction 5 is [6] altogether erroneous. It declares the rule announced by section 6068, Revised Codes, but by the very terms of that section the rule is not applicable to a case of conversion. The section states the rule for determining the measure of damages in tort actions "except where otherwise expressly provided by this Code." The succeeding sections of the same chapter—6069, 6070, 6071, 6073 and 6074—do otherwise provide for a different rule of damages for each of the special tort actions enumerated, including the action in conversion.

In enacting section 6071 the legislature evinced an in- [7] tention to establish the measure of damages for the wrongful conversion of personal property in the first instance. The presumption announced is a disputable one, and may be overcome by evidence that by reason of the peculiar circumstances surrounding the property greater or less injury results from its wrongful conversion than the statute contemplates; but in the absence of proof of such special circumstances the statutory rules govern. The plaintiff pleaded special damages, but the allegations relating thereto were traversed by the answer. We think the correct practice required the trial court to submit the statutory rules for determining the damages in the first instance, and to supplement those rules by an instruction that, if the special damages pleaded, or any of them, were proved, such damages might be allowed in addition to those contemplated by section 6071. It is no answer to say that this is an action in trespass. Every conversion of personal property implies a [8] trespass, but every trespass does not constitute a conversion.

4. The court gave instruction No. 8, as follows: "You are instructed that, if you should find that the defendant constable willfully and knowingly allowed himself to become the tool of [9] Leo Spring, the attaching plaintiff in the case of *Leo*

*Spring* v. *J. H. Madden,* or his attorney, and that their object was apparently malicious, and that an unlawful levy on plaintiff's property was made in a high-handed and oppressive way to oppress the plaintiff, then you may, in your discretion, award exemplary damages in this case against the defendant constable.'' By instruction 6 the court had already covered the subject of punitive damages adequately, and the purpose of instruction 8 is not apparent. As an argument to the jury it might not be objectionable, but as a statement of the law for the enlightenment of the jury it could not but fail to accomplish any useful purpose.

5. Over objection the defendant Adamson, while a witness in his own behalf and on cross-examination, was compelled to detail a conversation between himself and W. D. Tipton, attorney for Spring in the action by Spring against Madden. Neither Spring nor his attorney was a party to this action, and the evidence elicited was hearsay and immaterial to the determination of any issue before the court.

The judgment is reversed and the cause is remanded for further proceedings.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.

Rehearing denied February 17, 1917.